1
2
3
4
5
6
7
8

Khor Chin Lim
4048 Ingram Drive,
Janesville, WI 53546
Tel : 608-746-0828
Email: kclim478@yahoo.com
Pro Se Plaintiff

9       IN THE UNITED STATES DISTRICT COURT

10      NORTHERN DISTRICT OF TEXAS

11

12   Khor Chin Lim,                                    Case No. :

13                     Plaintiff,                      COMPLAINT

14   vs.

15

16   Committee of Bar Examiners of State Bar of California
     City of Chicago, Illinois

17   Lucien Wong
     Singapore Telecommunications Private Limited

18   Michelle Obama
     Barack Obama

19   Rahm Emanuel

20   AT&T Inc.
     AT&T Services Inc.

21   AT&T Mobility LLC
     AT&T Corp.

22   Harry S Bennett

23   Harold W Burlingame
     Steven W Hooper

24   Frank Ianna
     Marilyn Laurie

25   Gail J McGovern

26   Victor E Millar
     Richard W Miller

27   David C Nagel

28

COMPLAINT
- 1 -

John Petrillo
Ron J Ponder
Richard J Srednicki
John R Walter
Jeffrey Weitzen
Paul J Wondrasch
John D Zeglis
Maureen B Tart
PricewaterhouseCoopers LLP
Kenneth T Derr
M Kathryn Eickhoff
Walter Y Elisha
Ralph S Larsen
Donald F McHenry
Michael I Sovern
Joseph D Williams
Thomas H Wyman
Alvin Bragg
New York County of State of New York
Jack Smith
Fani Willis
Fulton County of Georgia
Letitia James
Democratic Party of Texas
Democratic Party of USA
Democratic Party of Wisconsin
Government Investment Corporation Singapore
Temasek Holdings Pte Ltd
GIC Real Estate Inc.
Lee Hsien Loong
Li Hongyi
Li Haoyi
Li Yipeng
Lee Xiuqi
Ho Ching
Heng Swee Keat
Liu Tuck Yew
Nancy M Olson
IndCor Properties Inc.
Store Capital Corporation
Summit Industrial Income REIT
Dream Industrial REIT

COMPLAINT
- 2 -

Dream Summit Industrial LP
E Jean Carroll
Ruby Freeman
Wandrea Moss
Michael Carp
Tia Miyamoto
Malia Ann Obama
Sasha Obama
Government of Singapore
State Bar of California
Mark Trierweiler
Jill Biden
Joseph Biden
Hunter Biden
New York State Board of Law Examiners
Office of Cook County District Attorney
Government of Cook County
Kimberly M. Foxx
National Conference of Bar Examiners
American Honda Finance Corporation
Mark Pittman
AMMB Holdings Bhd
AmBank (M) Bhd
Md Nor Md Yusof
Sulaiman bin Mohamed Tahir
Azman Hashim,
Seow Yoo Lin
Ernst & Young LPT
Ernst & Young of Texas
Ernst & Young of Wisconsin
Ernst & Young Global Limited
Yin Ching Tan
Yoke Foong Tham, Vivian
Goh Cheng Guan Holdings Sdn Bhd

And does 1 through 18..,

Defendants

Plaintiff, Khor Chin Lim, alleges as follows:

1.  Plaintiff Khor Chin Lim, (hereinafter referred to as "plaintiff"), of 4048 Ingram Drive, Janesville, WI 53546, is a resident and citizen of State of Wisconsin.

COMPLAINT
- 3 -

2. Defendant City of Chicago, (hereinafter referred to as "Chicago") is an Illinois municipal corporation and service of process is with the Manager or Clerk of the City, whose address is City Hall Office, 121 North LaSalle St, Room 107, Chicago IL 60602.

3. Defendant Lucien Wong (hereinafter referred to as "Lucien Wong") is the Attorney General of Singapore. His address is Attorney- General's Chamber of Singapore, 1 Upper Pickering Street, Singapore 058288. He is a resident and citizen of Singapore

4. Defendant Singapore Telecommunications Private Limited (hereinafter referred to as "Singtel") is incorporated in March as a separate company in Singapore, and, headquartered at 31 Exeter Road, Comcentre, Singapore 239732.

5. Defendant Michelle Obama, (hereinafter referred to as "Michelle") is a citizen and resident of Washington D.C. , her address of place of residence is unknown. She is the wife of Barrack Obama.

6. Defendant, Barack Obama, (hereinafter referred to as "Obama") is citizen of United States. He is the 44th President of United States and a resident of Washington D.C. The address of place of residence is unknown. He was the principal person for the LKY's clan to contact to commit bribery in USA to persecute and falsely prosecute plaintiff in USA. On information and belief, he is now deceased, so the action is against the estate of Barack Obama.

7. Defendant, Rahm Emanuel, (hereinafter referred to as "Rahm") is a US citizen, a former Mayor of City of Chicago, and an ambassador of US in Japan, his address is U.S. Embassy in Tokyo. 1-10-5 Akasaka. Minato-ku, Tokyo 107-8420 JAPAN.   He is sued in his capacity as a member of Democratic party, and in his individual and official capacity. He was the conduit for bribery in the City of Chicago's, false arrest and search and the related incidents. The aide of Obama.

8. Defendant AT&T, Inc. (hereinafter referred to as "AT&T, Inc."), AT&T, Inc, a Delaware corporation headquartered or having the principal office at 208 S. Akard Street , Dallas, Texas 75202 . Service is on CT Corporation, 155 Federal Street, Boston MA

AT&T Inc. has around 2022, in bad faith, beached the contract for Internet service, by arbitrarily increased the price of monthly service to over $90.00 when plaintiff was at the Janesville store of AT&T, Inc. to make payment over the kiosk. No other invoice has been mailed. No prior notice about the increase was ever sent. They refused to honor any discount.

9. Defendant AT&T Services, Inc. (hereinafter referred to as " AT&T Svc")  with its principal office or place of business at  208 S. Akard Street, Dallas, Texas 75202.

COMPLAINT
- 4 -

10.     Defendant  AT&T Corp. (hereinafter referred to as AT&T Corp.") with its principal office or place of business One AT&T Way , Bedminster, New Jersey 07921.

11.     Defendant AT&T Mobility LLC, (hereinafter referred to as "AT&T Mobility"), which is a Delaware limited liability company, with its principal office or place of business at 1025 Lenox Park Boulevard NE, Atlanta, GA 30319.

12     Defendant AT&T Inc., AT&T Svc, AT&T Corp., and AT&T Mobility are together hereinafter referred to as "AT&T"). The agent for service for all of them is CT Corporation, 155 Federal Road, Suite 700, Boston, MA .

13     Defendant Harry S. Bennett, (hereinafter referred to as "Bennett"), of 208 S Akard Street , Dallas, Texas 75202 at all material time is Vice President & General Manager, AT&T Local Services Division

14.     Defendant Harold W. Burlingame, (hereinafter referred to as "Burlingame"), of 208 S. Akard Street , Dallas, Texas 75202, at all material time is Executive Vice President, Human Resources. A citizen of Texas.

15.     Defendant Steven W. Hooper,  (hereinafter referred to as "Hooper"), of 208 S. Akard Street , Dallas, Texas 75202 , at all material time is President & Chief Executive Officer - AT&T Wireless Services. A citizen of Texas.

16.     Defendant Frank Ianna (hereinafter referred to as "Ianna"), of 208 S. Akard Street , Dallas, Texas 75202 , at all material time is  Vice President & General Manager, Network & Computing Services & AT&T Chief Quality. A citizen of Texas.

17.     Defendant Marilyn Laurie (hereinafter referred to as "Laurie"), of 208 S. Akard Street , Dallas, Texas 75202, at all material time is Executive Vice President, Brand Strategy & Marketing Communications. A citizen of Texas.

18.     Defendant Gail J. McGovern, (hereinafter referred to as "McGovern"), of 208 S. Akard Street , Dallas, Texas 75202 , at all material time is  Executive Vice President, Consumer Markets Division. A citizen of Texas.

19.     Defendant Victor E. Millar , (hereinafter referred to as "Millar"), of 208 S. Akard Street , Dallas, Texas 75202, at all material time is President & Chief Executive Officer, AT&T Solutions. A citizen of Texas.

20.     Defendant Richard W. Miller , (hereinafter referred to as "Miller"), of 208 S. Akard Street , Dallas, Texas 75202, at all material time is Senior Executive Vice President and Chief Financial Officer. A citizen of Texas.

COMPLAINT
- 5 -

21.     Defendant David C. Nagel (hereinafter referred to as "Nagel"), of 208 S. Akard Street , Dallas, Texas 75202 at all material time is President, AT&T Labs. A citizen of Texas.

22.     Defendant John Petrillo  (hereinafter referred to as "Petrillo"), of 208 S. Akard Street , Dallas, Texas 75202 at all material time is Executive Vice President, Strategy & New Service Innovation and International. A citizen of Texas.

23.     Defendant Ron J. Ponder  (hereinafter referred to as "Ponder"), of 208 S. Akard Street , Dallas, Texas 75202 , at all material time is Executive Vice President, Operations & Service Management. A citizen of Texas.

24.     Defendant Richard J. Srednicki (hereinafter referred to as "Srednicki"), of    208 S. Akard Street , Dallas, Texas 75202, at all material time is President & Chief Executive Officer, AT&T Universal Card Services. A citizen of Texas.

25.     Defendant John R. Walter (hereinafter referred to as "Walter"), of 208 S. Akard Street , Dallas, Texas 75202, at all material time is President and Chief Operating Officer. A citizen of Texas.

26.     Defendant Jeffrey Weitzen  (hereinafter referred to as "Weitzen"), of 208 S. Akard Street , Dallas, Texas 75202, is Executive Vice President, Business Markets Division. A citizen of Texas.

27.     Defendant  Paul J. Wondrasch (hereinafter referred to as "Wondrasch"), of 208 S. Akard Street , Dallas, Texas 75202, at all material time is Senior Vice President, International Policy Development & Operations Support. A citizen of Texas.

28.     Defendant John D. Zeglis (hereinafter referred to as "Zeglis"), of 208 S. Akard Street , Dallas, Texas 75202, at all material time is General Counsel and Senior Executive Vice President. A citizen of Texas.

29.     Defendant Maureen B. Tart (hereinafter referred to as "Tart"), of 208 S. Akard Street , Dallas, Texas 75202, at all material time is Vice President , Accounting. A citizen of Texas.

30.     Defendant, PricewaterhouseCoopers LLP, (hereinafter referred to as "PwC"), of 2121 North Pearl Street Suite 2000, Dallas, Texas 75201 at all material time is the auditor for AT&T.

31.     Defendant Kenneth T. Derr  (hereinafter referred to as "Derr"), of 208 S. Akard Street , Dallas, Texas 75202  at all material time is a director of  AT&T. He is a citizen of Texas.

32.     Defendant M. Kathryn Eickhoff (hereinafter referred to as "Eickhoff"), of 208 S. Akard Street , Dallas, Texas 75202 at all material time is a director of  AT&T, is a citizen of Texas.

33.     Defendant Walter Y. Elisha(hereinafter referred to as "Elisha"), of 208 S. Akard Street , Dallas, Texas 75202 at all material time is a director of  AT&T. He is a citizen of Texas.

34.     Defendant Ralph S. Larsen (hereinafter referred to as " Larsen"), of 208 S. Akard Street , Dallas, Texas 75202 at all material time  is a director of  AT&T . He is a citizen of Texas.

35.     Defendant Donald F. McHenry (hereinafter referred to as "McHenry"),  of 208 S. Akard Street , Dallas, Texas 75202 at all material time is a director of AT&T.   He is a citizen of Texas.

36.     Defendant Michael I. Sovern (hereinafter referred to as "Sovern"), of 208 S. Akard Street , Dallas, Texas 75202 at all material time is a director of  AT&T.  He is a citizen of Texas.

37.     Defendant Joseph D. Williams (hereinafter referred to as "Williams"),  of  208 S. Akard Street , Dallas, Texas 75202 at all material time is a director of  AT&T . He is a citizen of Texas.

38.     Defendant Thomas H. Wyman (hereinafter referred to as "Wyman"), of 208 S. Akard Street , Dallas, Texas 75202  at all material time is a director of AT&T.  He is a citizen of Texas.

39.     Defendant, Alvin Bragg (hereinafter referred to as "Bragg") is the Manhattan Prosecutor, the address of place of residence of the defendant is unknown. His official business address is One Hogan Place, New York, NY 10013. He is sued in his capacity as a member of Democratic party, and in his individual capacity. He is a resident of New York.

40.     Defendant, New York County of State of New York, (hereinafter referred to as "Manhattan") is a county in the State of New York. The address for service of legal process is the Clerk of New York County, New York County Courthouse, 60 Centre Street, Room 161, New York, NY 10007.

41.     Defendant, Jack Smith (hereinafter referred to as "Smith") is the US Department of Justice special counsel, the address of place of residence of the defendant is unknown. His official business address is Department of Justice Special Counsel's Office, 950 Pennsylvania Avenue NW, Room B-206, Washington, D.C. 20530. He is sued in his capacity as a member of Democratic party, and in his individual capacity.

42.     Defendant, Fani Willis (hereinafter referred to as "Willis") is the district attorney for Fulton County, Georgia.  The address of place of residence of the defendant is unknown . Her official business address is 141 Pryor St. SW, Atlanta, GA 30303. She is a citizen of Georgia. She is sued in her capacity as a member of Democratic party and in her individual capacity.

43.     Defendant Fulton County, Georgia, (hereinafter referred to as "Fulton") 141 Pryor St. SW, Atlanta, GA 30303. The address for service of legal process is Clerk of Fulton County, 141 Pryor St. SW, Atlanta, GA 30303.

44.     Defendant, Letitia James, (hereinafter referred to as "James") is a resident of New York. The Attorney General of New York, the address of place of residence of the defendant is unknown. Her official business address and for service of process is Managing Attorney's Office, Empire State Plaza, Justice Building, 2nd Floor, Albany, NY 12224. She is sued in her capacity as a member of Democratic party, and in her individual capacity.

45.     Defendant, Democratic Party of Texas, (hereinafter referred to as "Texas Dem") is a "branch" of Dem and its party organization address is  P.O. Box 15707, Austin, TX 78761.

46.     Defendant, Democratic Party of USA, (hereinafter referred to as "Dem") is a party organized in USA, a political party duly registered with address at 430 South Capitol Street Southeast, Washington, DC 20003. It includes all the "branch" of state democrats in US.

47.     Defendant, Democratic Party of Wisconsin, (hereinafter referred to as "Wis Dem") is a "branch" of Dem and its organization address is P.O. Box 1686, Madison, WI 53701.

48.     Defendant Singapore Telecommunications Private Limited (hereinafter referred to as "Singtel") is incorporated in March as a separate company in Singapore, and, headquartered at 31 Exeter Road, Comcentre, Singapore 239732.

49.     Defendant, Government Investment Corporation Singapore (hereinafter referred to as "GIC"), of 168 Robinson Road #37-01, Capital Tower Singapore, Singapore 068912.

50.     Defendant, Temasek Holdings Pte Ltd (hereinafter referred to as "Temasek") 60B Orchard Road #06-18 Tower 2, The Atrium@Orchard, Singapore 238891.

51.     Defendant, GIC Real Estate Inc. (hereinafter referred to as "GIC Re"), the company headquartered or incorporated at Delaware, at Address:1209 Orange Street, Wilmington, DE 19801.Registered agent for service of process is: C T Corporation System, 28 Liberty St., New York, NY 10005.

52.     Defendant, Lee Hsien Loong (hereinafter referred to as "LHL") is a citizen of Singapore and his address is at Orchard Road, Istana, Singapore 238823. He recently stepped down as Prime Minister of Singapore.

53.     Defendant Li Hongyi (hereinafter referred to as "Hongyi") is a citizen of Singapore, with his address at Orchard Road, Istana, Singapore 238823. He is a son of LHL.

54.     Defendant,   Li Haoyi,   (hereinafter referred to as "Haoyi") is a citizen of Singapore, with his address at Orchard Road, Istana, Singapore 238823. He is a son of LHL.

55.     Defendant,   Li Yipeng,   (hereinafter referred to as "Yipeng")  is a citizen of Singapore, with his address at Orchard Road, Istana, Singapore 238823. He is a citizen of Singapore

56.     Defendant,   Lee Xiuqi,   (hereinafter referred to as "Xiuqi") is a citizen of Singapore, with her address at Orchard Road, Istana, Singapore 238823. She is a daughter of LHL.  She is a citizen of Singapore

57.     Defendant, Ho Ching (hereinafter referred to as "HC"), is a citizen of Singapore, with her address 60B Orchard Road #06-18 Tower 2, The Atrium@Orchard, Singapore 238891. She is wife of LHL. She is a citizen of Singapore

58.      Defendant, Liu Tuck Yew (hereinafter referred to as "LTY") of 3501 International Court, Northwest, Washington, D.C. 20008, is the Ambassador of Singapore in USA. He is the ambassador of Singapore in USA. He is a citizen of Singapore

59.     Defendant, Nancy M Olson ( hereinafter referred to as "Olson") , a partner of law firm Skadden Arps Slate Meagher & Flom LLP of Chicago. She is a resident of Illinois. Her residence address is unknown. The address where she practices is at is 155 N. Wacker Drive, Chicago, Illinois 60606.

60.     Defendant IndCor Properties Inc. (hereinafter referred to as "IndCor") (industrial real estate) is a corporation owned by GIC, the property plaintiff is seeking injunction to freeze, it is located in one of the states in US , but the exact address is unknown.

Plaintiff avers that all partners of Olson at Skadden Arps Slate Meagher & Flom LLP are liable.

61.     Defendant Store Capital Corporation (hereinafter referred to as "Store")  is a corporation owned by GIC, the property of the corporation that plaintiff is seeking injunction to freeze, it is located in one of the states in US , but the exact address is unknown.

62.     Defendant Summit Industrial Income REIT (hereinafter referred to as "Summit") is an unincorporated open-ended trust owned by GIC, the property of that entity that plaintiff is seeking injunction to freeze, and it is located in one of the states in US , but the exact address is unknown.

63.     Defendant Dream Industrial REIT (hereinafter referred to as "DIR") is an unincorporated open-ended trust owned by GIC, the property of that entity that plaintiff is seeking injunction to freeze, and it is located in one of the states in US , but the exact address is unknown.

COMPLAINT
- 9 -

64.     Defendant Dream Summit Industrial LP (hereinafter referred to as "Dream LP"), REIT is a legal entity owned by GIC, the property of that entity that plaintiff is seeking injunction to freeze, and it is located in one of the states in US , but the exact address is unknown.

65.     Defendant E Jean Carroll (hereinafter referred to as "Carroll ") is a member of Democrat Party.

Democrats maliciously persecuted and prosecuted plaintiff  in Illinois , criminal Case No. 12CR 18264; in Dane County, criminal forfeiture Case No. : 2012FO791; in California, City of Santa Monica, citation for "misdemeanor", corrected later as an "infarction", Citation No. 630983 by Brent Wilkening of City of Santa Monica Police Department due to bribery and maliciously persecuted and prosecuted non-parties because of his political/social group affiliations, at various locations in USA, including political criminal prosecution of non-parties and plaintiff at various parts of USA.

66.     Defendant Ruby Freeman, (hereinafter referred to as "Freeman") is a member of Democrat party.

67.     Defendant Wandrea Moss (hereinafter referred to as "Moss") is a member of Democrat party.

Plaintiff seeks only injunctive relief against Carroll, Freeman and Moss.

68.     Defendant Michael Carp (hereinafter referred to as "Carp") is a resident of California, address unknown.

69.     Defendant Tia Miyamoto, (hereinafter referred to as "Tia") is a resident of California, a present person in charge of GIC real property investment in US. Her address unknown. She is a resident of California.

70.     Defendant Malia Ann Obama, (hereinafter referred to as "Malia") is the daughter of Obama, address unknown. She is a resident of California.

71.     Defendant Sasha Obama, (hereinafter referred to as "Sasha") is the daughter of Obama, address unknown. She is a resident of California.

72.     Defendant Government of Singapore (hereinafter referred to as "SG"), service is on the Attorney General of Singapore, Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

73.     Defendant State Bar of California, (hereinafter referred to as "Cal State Bar") and service is on the Attorney General of California, 1515 Clay Street, Oakland, CA 94612.

74.     Defendant Mark Trierweiler, (hereinafter referred to as "Trierweiler") AT&T , 208 S. Akard Street , Dallas, Texas 75202 at all material time, is a  Public Policy and Strategy director.

Cal State Bar is against whom a mandatory injunctive is sought to register plaintiff as an attorney called to State Bar of California. The address of the State Bar of California is : 180 Howard Street, San Francisco, CA 94105.

75.     Defendant Committee of Bar Examiners of State Bar of California (hereinafter referred to as the "Committee") , is located at 180 Howard Street, San Francisco, CA 94105. Service is on the Attorney General of California, 1515 Clay Street, Oakland, CA 94612.

76.     Defendant National Conference of Bar Examiners, (hereinafter referred to as "NCBE"), Is located at 302 S Bedford Street, Madison WI 53703.

77.     Defendant Jill Biden, (hereinafter referred to as "Jill") is the wife of Joseph Biden, her address is unknown. She is a resident of Washington, D.C.

78.     Defendant Joseph Biden, (hereinafter referred to as "Biden") is the President of USA, his address is at Washington D.C. . He is a resident of Washington, D.C.

79.     Defendant Hunter Biden, (hereinafter referred to as "Hunter") is the son of Joseph Biden, his address is unknown.

80.     Defendant Heng Swee Keat (hereinafter referred to as "HSK") is the Deputy Prime Minister of Singapore, and his address is at Orchard Road, Istana, Singapore 238823.

81.     Defendant Office of District Attorney of Cook County, (hereinafter referred to as Cook County DA"), and service of legal process is at 50 W Washington Street, 5th Floor, Chicago, IL 60602.

82.     Defendant Cook County Government of Illinois, (hereinafter referred to as " Cook County Govt"), is a government entity and service of legal process is on Clerk, at 118 N. Clark Street, #120, Chicago, IL 60602.

83     Defendant Kimberly M. Foxx, (hereinafter referred to as "Foxx"), is the District Attorney of Cook County, and service of legal process is at 50 W Washington Street, 5th Floor, Chicago, IL 60602.

84    Defendant Toni Preckwinkle, (hereinafter referred to as "Toni"), is the Cook County Board President, and her address is at 118 N. Clark Street, #120, Chicago, IL 60602.

85.    Defendant American Honda Finance Corporation, (hereinafter referred to as " AHFC") with address at 1919 Torrance Blvd, Torrance, CA 90501.

AHFC, in conspiracy, fraudulently duplicated car key of the car Wisconsin license plate 892 XDK, Honda CR-V, 2016, that was on finance loan to plaintiff. The loan agreement entered in around 2021 is therefore void, so is the sale and purchase agreement with car loan financing with Rock County Honda.

86.    Defendant, AMMB Holdings Berhad, (hereinafter referred to as "AMMB") is a holding company incorporated in Malaysia. Its address is at 22nd Floor, Bangunan AmBank Group, No. 55, Jalan Raja Chulan, 50200 Kuala Lumpur, Malaysia.

87 .    Defendant, AmBank (M) Berhad (hereinafter referred to as "AmBank ") is a bank incorporated in Malaysia, with address at Level 24, Menara AmBank. No.8 Jalan Yap Kwan Seng, 50450 Kuala Lumpur, Malaysia. It is 100% owned by AMMB Holdings Berhad.

88.    Defendant, Md Nor Md Yusof, (hereinafter referred to as "Yusof') is an individual citizen of Malaysia. His residence unknown and his business address is 22nd Floor, Bangunan AmBank Group, No. 55, Jalan Raja Chulan, 50200 Kuala Lumpur, Malaysia.

89.    Defendant, Sulaiman bin Mohamed Tahir, (hereinafter referred to as "Tahir") is the CEO of AMMB Holdings, Inc., his residence is unknown, and his business address is 22nd Floor, Bangunan AmBank Group, No. 55, Jalan Raja Chulan, 50200 Kuala Lumpur, Malaysia.

90.    Defendant, Azman Hashim, (hereinafter referred to as "Hashim") is an individual citizen of Malaysia. His residence unknown business address is at 22nd Floor, Bangunan AmBank Group, No. 55, Jalan Raja Chulan, 50200 Kuala Lumpur, Malaysia. He is a director of AMMB

91.    Defendant, Seow Yoo Lin (hereinafter referred to as "Seow") is an individual citizen of Malaysia. His residence is unknown and his business address is at 22nd Floor, Bangunan AmBank Group, No. 55, Jalan Raja Chulan, 50200 Kuala Lumpur, Malaysia. He is a director of AMMB

92.    Defendant, Ernst & Young LPT (hereinafter referred to as "EY-M'sia) is the auditor of AMMB and AmBank who prepared the consolidated financial statement for the AMMB groups of companies and annual reports. EY-M'sia's address is Level 23A, Menara Millenium Jalan Damanlela, Pusat Bandar Damansara, 50490 Kuala Lumpur, Malaysia. The defendant legal entity is in partnership with all the other Ernst & Young accounting, auditing, consulting partners in the legal entity Ernst & Young Global Limited.

93.     Defendant, Ernst & Young of Texas (hereinafter referred to as "EY-Texas") is a partner of EY-M'sia, and the address is 401 Congress, Suite 3200, Austin 78701.

94.     Defendant, Ernst & Young of Wisconsin (hereinafter referred to as "EY-Wis") is a partner of EY-M'sia , and the address is 875 E Wisconsin Ave, Milwaukee, WI 53202.

95.     Defendant, Ernst & Young Global Limited (hereinafter referred to as "EY-Global") is at 6 More London Place, London, England, SE12AF. EY-Global is partnership world-wide and each of the partners is liable to plaintiff.

96.     Defendant, Yin Ching Tan, (hereinafter referred to as "YC") is a citizen of Malaysia. Her residence address is unknown. She is an employee of AmBank. YC is the youngest sister of Chong Kwan Tan, and Chong Kwan Tan is the husband of Allison. YC is Allison's sister-in-law. Her address is Level 24, Menara AmBank, No. 8 Jalan Yap Kwan Seng, Kuala Lumpur, Malaysia. She is an employee of AmBank. Allison is Plaintiff's youngest sister.

97.     Defendant, Yoke Foong Tham, Vivian, (hereinafter referred to as "Vivian") is a citizen of Malaysia and the address of place of residence is unknown. Her address is Level 24, Menara AmBank,  No. 8 Jalan Yap Kwan Seng, Kuala Lumpur, Malaysia. Vivian is the ex-wife of Chong Wei Tan.  Chong Wei Tan is the younger brother of Chong Kwan Tan. Vivian is an employee of AmBank.

98.     Defendant, Goh Cheng Guan Holdings Sdn Bhd (hereinafter referred to as "Cheng Guan"), is a company incorporated in Malaysia and carrying business at 168A, Lorong 5, Taman Bedong Jaya, 08100, Bedong, Kedah, Malaysia.

99.     The defendants herein as conspirators, regardless as to the time the conspiracy starts, or when they joined the conspiracy later, all conspirators are jointly and severally liable. The conspirators do not include defendants E Jean Carroll, Ruby Freeman, Wandrea Moss, against whom plaintiff seeks injunctive relief only.

100.     Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES 1-18, inclusive, and therefore alleges and sues the Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each fictitiously named Defendant has acted as a conspirator and is indebted to Plaintiff as hereinafter alleged and that plaintiff's rights against each such fictitiously named Defendant arise from such indebtedness.

101.     Plaintiff is informed and believes, and on that basis alleges that all the Defendants herein have engaged in a conspiracy, common enterprise, and common course of conduct, including bribery, the purpose of which is and was to engage in the violations of law alleged in

this Complaint and have fraudulently concealed the act of bribery. The conspiracy, common enterprise and common course of conducts, bribery and fraudulent concealment started in 1992 in Singapore and continue to the present time.

102.    Whenever reference is made to this Complaint to any act of the Defendants, such allegation shall mean that such Defendant performed the acts alleged in this Complaint either personally through the Defendants' officers, directors, employees, agents and/or representatives acting within the actual or ostensible scope of their authority.

103.    At all times mentioned herein, each of the defendants knew that the other defendants were engaging in or planned to engaged in the violation of law alleged in this Complaint, pursuant to unlawful purposes. Knowing that the other defendants were engaging in or continue to engage in such unlawful conduct, each of the defendant nevertheless facilitated or is facilitating the commission of such unlawful acts. Each of the Defendants intended to and did encourage, facilitate, or assist in the commission of the unlawful acts alleged in this Complaint, including bribery to commit unlawful, tortious acts in Singapore and in US, a chain of conduct and has origin from acceptance of bribes provided by LKY's clan, acceptance of bribes at Dallas and elsewhere to commit the tortious and/or unlawful acts.

Jurisdiction

104.    This Court has federal question jurisdiction relating to US statute related to bribery, including Foreign Corrupt Practices Act of 1977. (FCPA).

Supplemental jurisdiction

105.    Additional claims, if any, arising under state law, also concurrently may be adjudicated in the federal district court, if they are so interrelated that together these two species of claims form part of the same case or controversy. 28 U.S.C. §1367 The state law applicable is the state law of Texas.

Venue

106.    Venue is proper in this Northern District of Texas is proper as Defendant AT&T, are located in Dallas and Tex Dem is located in Austin, Texas.

COMMON ALLEGATIONS

Bribery: violation of Foreign Corrupt Practices Act of 1977. (FCPA).

107.    Bribery at first took place in Wisconsin at University of Wisconsin-Milwaukee ("UWM") around 1995/1996 and caused the bad faith academic dismissal of plaintiff, and the source of bribery is LKY's clan, with AT&T as conduits of bribery, which is based in Dallas, and later took place at various parts/locations of USA, to commit unlawful and tortious acts against plaintiff.

COMPLAINT<br>- 14 -

108.     The bribes by LKY's clan, which are criminal acts with AT&T as conduit in 1995 or earlier, also involved the Democrats of USA,  and all unlawful and tortious acts due to bribery with AT&T at Dallas as conduit and later via attorney Olson as conduit, acting to purchase assets on behalf of LKY's clan in USA.

In 2020, the sum about Ringgit $5 millions in Malaysia in the bank account maintained at AmBank was "frozen", the sum that is "frozen" belonged to estate of Lim Peet Kwang ("estate of LPK"), the sum of about Ringgit $5 millions is the proceeds of sale of vacant land, lot 168 by executrixes of estate of Lim Peet Kwang, lot 168 is part of estate of LPK.

The freezing of account by AMMB and AmBank, was caused by LKY's clan, and they acted in conspiracy, and the sum was channeled as bribes to US also, to harm plaintiff, and among others, resulting in plaintiff's  failing the July 2021 California Bar Exams.

109.     As a result of the bribery, the harming of plaintiff happened at various locations/parts of US. Even though harming took place not at Dallas, it is an unbroken chain of acts, from bribery in Dallas, ( later bribery through attorney Olson in Chicago) , and the channeling of sum of about Ringgit $5 millions, thus all cause of action, arise in Dallas, and the taking place of illegal/tortious incidents at all locations and all parts of USA, is also taking place at Dallas as an unbroken chain of acts.

110.     AT&T Inc., AT&T Services Inc., AT&T Mobility LLC , AT&T Corp.,  Mark Treirweiler, Harry S Bennett, Harold W Burlingame , Steven W Hooper, Frank Ianna, Marilyn Laurie, Gail J McGovern , Victor E Millar , Richard W Miller, David C Nagel , John Petrillo, Ron J Ponder, Richard J Srednicki, John R Walter , Jeffrey Weitzen , Paul J Wondrasch , John D Zeglis, Maureen B Tart, PricewaterhouseCoopers LLP , Kenneth T Derr , M Kathryn Eickhoff  , Walter Y Elisha, Ralph S Larsen, Donald F McHenry, Michael I Sovern, Joseph D Williams , Thomas H Wyman, i.e. all the defendants from AT&T, the directors , management are collectively referred to as **"AT&T defendants".**

AMMB, AmBank, Yusof, Tahir, Hashim, Seow, YC, Vivian, EY-Global, EY-M'sia, EY-Texas, EY-Wis, Cheng Guan, collectively referred to as **"Malaysia Extra defendants".**

Personal jurisdiction
Special personal jurisdiction: forum defendants and minimum contacts

111.     Presence of Defendants in forum State of Texas, are AT&T, Texas Dem.

112.     In relation to "out-of-state" defendants, the pleaded facts herein meets the statutory long arm statute and Constitutional due process requirements of minimum contacts, i.e., "Foreseeability " , minimum contacts is present as the defendants purposely availed themselves of the advantage that the bribes that was paid from Dallas AT&T as conduit and from LKY's clan,

and they acted in conspiracy, the advantage to all defendants in US, who are at all over the United States, thus, they have the minimum contacts. The defendant carried out the unlawful tortious act with the bribes from Dallas, thus the chain of bribery as causation is never broken, the acts were committed in Dallas and they have the minimum contact with the forum. All acts were committed in Texas.

113.    In this case, it is "fair, the "foreseeability" and "purposeful availment" requirements are satisfied.  Those defendants having accepted bribes by LKY's clan, AT&T as conduit in Dallas, and later Olson as conduit, can be sued at the forum State, Texas, since constitutional due process is satisfied in this case by the actions of bribery via AT&T in Texas, their fraudulent concealment, in conspiracy and criminal acts of bribery and false prosecution directed at plaintiff and coordinated by ex-President Obama and present leader of Democrats, also directed against individuals whom they perceived whose interests are inconsistent or in conflicts with the interests of the Democrat Party of USA.

114.    Conspiracy theory as establishing minimum contacts and due process:
The conspiracy theory of jurisdiction is based on two principles: (1) that the acts of one co-conspirator are attributable to all coconspirators, McLaughlin v. Copeland, 435 F. Supp. 513, 530 (D.Md.1977) ("McLaughlin"); and (2) that the constitutional requirement of minimum contacts between non-resident defendants and the forum can be met if there is a substantial connection between the forum and a conspiracy entered into by such defendants. Vermont Castings, Inc. v. Evans Products Co., 510 F. Supp. 940, 944 (D. Vt.1981). The conspiracy theory of jurisdiction as developed in the cases, holds that when several individuals (1) conspire to do something (2) that they could reasonably expect to have consequences in a particular forum, if one co-conspirator (3) who is subject to personal jurisdiction in the forum (4) commits overt acts in furtherance of the conspiracy, those acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction even if they have no other contacts with the forum.

Foreseeability:
115.    Personal jurisdiction based on conspiracy is premised on the ground that those who conspired have the notice, constructive notice and or knowledge that they will be sued at this Court as the conspirator. There exists actual or constructive notice on each of the defendant that by accepting bribes from AT&T as conduit and later from Olson as conduit, their acts are criminal and fraudulent and is subject to extradition and general jurisdiction of State of Texas. To analogize and extend further, since, they are subject to extradition, they could be sued for all causes of actions and not just acts related to bribery.

Piercing of corporate veil:
116.    Piercing the veil of corporate entities as separate legal entities, is permissible in cases where Court seeks to sanction cases of "fraud or promote injustice.", *Hystro Prods., Inc v MNP, Corp*. , 18 F. 3d. 1384, 1388-89. (quoting Van Corn Co. v Future Chem & Oil Corp. 753 F 3 d 565, 569-70 (1985) 7th Cir)

117.    Thus, individuals of all the defendant corporations, eg. AT&T, Inc. etc falls under this Court jurisdiction. And the following corporation, piercing is warranted: AT&T, GIC, GIC Re, Temasek Holdings, Singtel. All the corporate defendants

118.     A pertinent case is *Ranza v Nike*, Case No. 13-35251, July 16, 2015, Ninth Circuit. (Relating to personal jurisdiction, piercing, alter ego relationship, quoting Unocal 248 F 3d  : fraud and injustice prong) 18 Am Jur. 2d Corporations §57)

119.    General personal jurisdiction exists in the case of governmental entities, State, County and municipal corporation, including, State Bar of California, City of Chicago, and others, can be sued in Court to answer all causes of actions in the case of general jurisdiction.

120.    As the legal entities acted through its "head", fraudulent concealment about the bribery by the "heads", is the act of the legal entities; and in the case of corporation, piercing of corporate veil is permissible, including those of GIC, GIC Re, IndCor, Summit etc.

Plaintiff alleges vast conspiracy in details as follows:
Special personal jurisdiction: bribery and conspiracy

Bribery and conspiracy:  the bad motive, viciousness, malice of LKY's clan and the context
Lee Kai Case: LKY's clan became "One".
121.    In the conspiracy of the defendants, it is permissible to draw "the inference of agreement from the nature of the proposals made . . .[and] from the substantial unanimity of action taken upon them by the [defendants].

122.    Plaintiff, a Malaysian, went to SG in 1980, studied in secondary school, Junior College, and National University of Singapore, graduated in 1990 from law school, admitted to SG bar on March 23, 1991 and thereafter worked for more than 3.5 years as part of the agreement of the grant from SG government to study at law school. Plaintiff was required to work for three years in SG after graduation, as a condition of the grant.

123.    In 1991, after being admitted to SG bar, around March, plaintiff started to work at Lee Kai, Lee Tat group of company owned by Hong Kong couple, late Mr. Tan Geok Tee and Mdm Ching Mun Fong.

Plaintiff left Singapore in 1995 and is familiar with Singapore, having lived there since 1980.

124.    LKY's clan persecution of plaintiff was because they were set up by plaintiff's former employer, Lee Tat and Lee Kai companies owners, late Mr. Tan Geok Tee and Mdm Ching Mun Fong. Also by Prime Minister Goh Chok Tong. It was the lawsuit that caused the persecution by

LKY's clan. On September 2, 1992, the Court of Appeal of SG decided the case Lee Kai Corporation (Pte) Ltd v. Chong Gay Theatres. [1992] SLR 689; [1992] SGCA 55.

125.     The decision was a set up by a Hong Kong couple, owner of Lee Kai groups of companies, party to the appeal, in Lee Kai case, setting up LKY, his family and law firm Lee & Lee, as LKY has authorized the legislation that paid much lower market price compensation for land acquired in SG, and the Hong Kong couple has suffered tremendous financial loss due to the under market price acquisition and compensation payment. They have sold their ships and dealt with real properties. And the real properties were acquired with low market price. The extra gain by the Singapore Government becomes part of the state coffer and part of Singapore foreign reserves to this date.

126.     The period is the times described by Wilfred Nathan, the police who prosecute plaintiff in District Court with three charges, the prosecutor, as "choppy seas" as it was the change of power and the rivalry at the peak period, former Prime Minister Goh Chok Tong just took over the helm of the government from Lee Kuan Yew.

127.     The loss to Mdm Ching and the extra to Singapore and LKY's clan is tremendous as land in Singapore is scarce. And SG build high rise buildings, known as HDB flats.

128.     Judge of Appeal LP Thean, appointed by former Prime Minister Goh Chok Tong who is rival to LKY and LHL and his family, intentionally snubbed LKY, his family and law firm Lee & Lee, as LP Thean is famed for being a better lawyer than LKY in SG.

129.     LKY, his family and law firm Lee & Lee, made the stupid submission in Lee Kai case, ended with "One".

Third class Lai Kew Chai and LHL

130.     Mr. Goh Chok Tong said late Lai Kew Chai, appointed by late Lee Kuan Yew, is a third class law graduate, and has no merits to be a High Court judge, and so is Lee Hsien Loong and Lee Kuan Yew is unfair and appointed the people from his law firm.

131.     Late Lai Kew Chai, is from Lee & Lee. And neither Lee Hsien Loong has merits to be a Prime Minister or to have a lesser position.

132.     Lee Kai and Lee Tat companies are owned by late Tan Geok Tee and Mdm Ching Mun Fong, a husband and wife business team from Hong Kong and doing business in Singapore.

133.      Lee Kai, purchased a few floors of offices in the Golden Miles Building in Singapore. They hired late Lai Kew Chai from law firm Lee & Lee, which was started by Lee Kuan Yew, his wife Kwa Geok Choo and Lee Kuan Yew's brother, Lee Suan Yew.

134.    Late Lai Kew Chai is a third class Honor law graduate, and from British tradition, it is the lowest class of the First class, second upper, second lower and then third class.

135.    The phrase, "whether…." was argued by the opposing lawyer to be "either", .. that is, either temporary or permanent, substituting it as to mean either temporary or permanent. Thus, the developer is not liable when they have the choice to procure either temporary or permanent and when they have procured the temporary, their duties are discharged and no longer liable after that.

136.    Mdm Ching Mun Fong was running the companies and she stated in sarcasm that Lee Kuan Yew is "robinhood", that is robbing the rich and to help the poor.  Plaintiff informed that it was two and in Cantonese is "leong kor". Mdm Ching Mun Fong was determined to get even or revenge against Lee Kuan Yew for the huge loss they suffered as their lands were acquired. The judgment in September 2, 1992 played out as she had wished. The developer won the lawsuit related to late interest and they are not liable once TOL was issued, i.e. instead of the two TOL and CIF, they, LKY's clan, ended with one. Lai Kew Chai failed to file summary Judgment.

137.    Mdm Ching Mun Fong later made the announcement after the judgment, catching LKY's clan by tremendous surprise and they LKY's clan, i.e. Lee Kuan Yew, Lee Hsien Loong and related parties, those inner circles, were stunned and setting LKY's clan on to a path of waging war against plaintiff, as there is nothing they can do against Mdm Ching Mun Fong, who is wealthy. Their war included bribing AT&T, Inc. and others, using government funds for personal use, and channeled the bribes to various parts of US.

138.    Immediately after the decision, around 1992, LKY acted viciously, violently and criminally, hired hitman, murder-for -hire, conspired with Ho Peng Kee and Tng Soon Chye, as pleaded in Cause # DC-24-04421, to ambush plaintiff for the "One" label attached to them. HPK held grudges against plaintiff as plaintiff's former instructor in law school where he lectured on few lectures about mistakes in contract law. And as vice dean we had an incident about a complaint by female which HPK unfairly publicized on Notice Board and interfered with plaintiff.

139.    LKY's clan immediately then made use of plaintiff's close friend while at law school Tng Soon Chye to call plaintiff on a Sunday morning to meet him at the law library.

140.    While inside the toilet, cubicle, a tan-faced man in his early twenties, ambushed plaintiff while plaintiff was clearing his bowel, he stepped on the "side" of the wall of the cubicle, which is open on top, like in any toilet and threw a brick, causing profuse bleeding.

141.    Plaintiff tried to give chase but to no avail as there were too many corners that the person could turn to and plaintiff failed to find and trace him.

142.     Later, after 9 sutures were placed to seal the wound. Police and plaintiff returned to the toilet, but the brick has been replaced with a stone and the traces of blood while plaintiff washed himself at the basin were all gone. Plaintiff earlier also had an unpleasant encounter with Ho Peng Kee, who had known Tng Soon Chye and they conspired with LKY's clan for the ambush by the hired hitman.

143.     LHL tried to take credits and pretended they knew. First by falsely claiming that Dr. Phang Sin Kat's law firm Phang & Co, hired plaintiff at $1,800.00/month, a salary that of big law firm where small law firm pay was $1,500.00/month.

144.     However, around 1993, plaintiff met LHL and his bodyguards outside the swimming of Teacher Training College at Bukit Timah Road, next to Yusuf Ishak House, he bore a grimmed look and the bodyguard looks angry.

145.     That was after the hitman incident at NUS law library. LHL probably was there to find out the extent of injury to plaintiff.

146.     LHL used Chong Kuan Keong to get information about Plaintiff. Chong Kuan Keong then was with David Chong & Co. a law firm which he worked for. Chong Kuan Keong is from Sungai Petani, also Kedah State of Malaysia.

147.     He also used Lee Fu Nyap, working at Ministry of Finance. Lee Fu Nyap also from Kedah, he lives near Sungai Petani, at sub-urban.

148.     Plaintiff's late father ever drove him to near his house at outskirt of Sungai Petani, padi field land, during his trip home during Chinese New Year.

149.     Lee Fu Nyap, then working at Property tax department , he and Chong Kuan Keong were plaintiff's hostel mates at Yusuf Ishak College, a dormitory. After the ambush Lee Fu Nyap made sarcastic remarks about the ambush.  Lee Fu Nyap informed plaintiff Lee Kai had missed a property tax credits which they could have applied.  Lee Fu Nyap was rewarded and employed by "Ascendas", controlled by GIC or Temasek Holdings.

Lee Hsien Loong, is a liar and vicious pretender.

**SG false prosecution defendants**

150.     In 1994, defendant SG went to Malaysia to falsely extradite plaintiff after the incident at Commercial Affairs Department. Lawrence Ang Boon Kong had suppressed evidence together with Roy Neighbour, Yeo Poh Teck, Rosalind Chong all acting in conspiracy.

151.     SG Inspector Wilfred Nathan went to Kedah to extradite plaintiff.

COMPLAINT
- 20 -

The hearing was held in Chamber of a Magistrate, in early morning about 7.147 am.
SG Inspector Wilfred Nathan went to Kedah to extradite plaintiff.
The hearing was held in Chamber of a Magistrate, in early morning about 7.14 am.

152.    The hearing is irregular and Defendants SG and Malaysia government failed to comply with the relevant statute for extradition, i.e.  the Malaysia Extradition Act 1992, with the following requirements:
- Requisition By Minister, Minister In Malaysia
- Magistrate Warrant
- Session Court Hearing In Malaysia
- Availability of High Court Habeas Corpus
- AG's Attorney To Prosecute, not early hour In Chamber prosecuted by police in Malaysia Magistrate Chamber in Alor Star.

In addition, there following are also  violations:

The venue should have been Court in Kulim, but they transported plaintiff to the capital of Kedah, Alor Star.

And there exists appeal as of right, the exercise of which was ended by coercion.

And plaintiff was not served with the Extradition papers.

And the order of the Court in Singapore was not signed when they handed a copy of some of the papers to plaintiff in the Chamber of the Magistrate.

153.    Malaysia failed to comply with all the statutory requirements.

154.    In 1994, after falsely extraditing and prosecuting plaintiff with 3 charges, the Attorney General of Singapore withdrew the charges around 2010.

155.    The prosecution was bad faith on the part of Lee Kuan Yew and Lee Hsien Loong with Chan Sek Keong acting as the attorney general, then.

156.    In 1994, after falsely extraditing and prosecuting plaintiff with 3 charges, the Attorney General of Singapore withdrew the charges around 2010.

157.    The prosecution was bad faith on the part of Lee Kuan Yew and Lee Hsien Loong with Chan Sek Keong acting as the attorney general, then.

Bribery, accomplice, accessory after facts, conspiracy

158.    Bribery took place in Wisconsin at University of Wisconsin-Milwaukee ("UWM")  around 1995/1996 and caused plaintiff to be dismissed academically in bad faith, and the source is LKY's clan , with AT&T as conduit, AT&T is based in Dallas.

The bribery, which is criminal acts with AT&T as conduit, all unlawful and tortious acts has origin at Dallas via AT&T, although the incidents of unlawful/tortious acts happened later at various parts of US, it is an unbroken chain of acts/events; i.e., from bribery in Dallas, later also through attorney Olson as conduit, to the commission of unlawful/tortious acts by the defendants, except Carroll, Wandrea and Moss, against whom injunctive relief is sought, all parties are liable to account, and is liable for the cause of action of unjust enrichment.

159.    Later in 2014, GIC, another company controlled by Ho Ching, wife of Lee Hsien Loong, channeled more bribe through the purchase of real property, attorney Nancy Olson acted as the attorney, a conduit for bribery or as conspired with accessory after fact ; among others, a 8.18 billions purchase.

160.    The form of the transaction is just a cover, Plaintiff's former employer, Joseph Yoong Tat Choy, prepared the sale and purchase agreement of a real property, but later the client filed complaint with the Law Society that it was in fact a high interest rate loan, using the house as a collateral.

161.    In Illinois, *DeLuna v Burciaga*, 223 Ill. 2d. 49, 76 (2006) (citing Crowell v Bilandic, 81 Ill. 2d 422, 428 (1980) , the Court held that " [A] fiduciary who is silent, and thus fails to fulfill his duty to disclose material facts concerning the existence of a cause of action, has fraudulently concealed that action, even without affirmative acts or representation.", the fiduciaries include Metcalf & Associates , P.C. and the attorneys, engaged to represent plaintiff in removal proceedings, and Joseph Kennelly and Erwin Frazin, attorneys engaged to overturn conviction in Case No. 12CR 18264.

162.    As the legal entities acted through its "head", fraudulent concealment about the bribery, the act is act of the legal entities, and in the case of corporation, piercing of corporate veil is permissible, including those of GIC, GIC Re, IndCor, Summit etc.

163.    In the Case of Cook County , Preckwinkle is the person directing the acts of Cook County.

164.    Wisconsin Statutes: LKY's clan violated Wisconsin provision regarding bribery, Sec. 36.02. where they caused the illegal exercise of discretion as a public servant, to prosecute and convict plaintiff in 2012FO00791 and in Hellenbrand Case No. 2011SC010663 case bribed Judge John Albert and in all cases decided by Judge Conley, including 22-cv-025 where he stopped the clerk from issuing Summons, plaintiff incurred loss of filing fees, of $402.00, when the case was dismissed voluntarily, without prejudice. They also violated FCPA.

COMPLAINT
- 22 -

165.    Bribery took place in Chicago also, and applying the test in 7th Cir, *Wachovia Securities , LLC* v *Banco Panamericano, Inc.,* 2012 WL 954123. C.A. 7) and elsewhere in California, Wisconsin, Maryland, New York.

Incidents of bribery and conspiracy:

166.    AT&T and LKY's clan: bribery and conspiracy in the present case, as have been pleaded earlier in cases filed in Dallas County District Court, including Cause No. 24-cv-04421.

167.    AT&T transacts business in Dallas and throughout the United States.

168.    "LKY's clan" includes : Lee Kuan Yew, Lee Hsien Loong, Lee Hsien Yang, Ho Ching, and all entities, parties organizations, individuals, under the control of them including Singapore Telecommunication Limited, Temasek Holdings Pte Ltd, Government Investment Corporation of Singapore, GIC Real Estate Pte Ltd,  GIC Re, individuals, real estate appraisers/valuers, attorneys, auditors, and legal entities, agents, employees  etc. including the defendants in Singapore herein and located in US and elsewhere .

169.    In December 1995 incident of bribery, AT&T sold its Chicago real property to Singapore Telecommunication Limited, SingTel, the CEO then was Lee Hsien Yang.  Lee Hsien Yang is the youngest son of Lee Kuan Yew, i.e. part of LKY's clan. The sale price exceeded $518.48 millions.

170.    And the bribery by the LKY's clan is disguised and "packaged" as the purchase of AT&T real property, and from the money received by AT&T, the money was channeled through this conduit to various bribes receivers in US, using the big company to avoid the anti-money laundering law and foreign bribery law detection in US, that could have been detected as illegal had the fund been channeled directly to the bribes receivers in US.

171.    In an incident, Lee Kuan Yew and Lee Hsien Loong were given a 7% discount and 12% discount in the purchase of condos from Ong Beng Seng-owned Hotel Property Ltd.  They already jumped at 7% and 12% discount for their personal advantage.

172.    But they were willing to squander, an unknown sum which is above market price,  to purchase building which may go down in price later, and when it goes down, the price could be much lower than the average.

173.    After forceful queries from then Prime Minister Goh Chok Tong, kicking into them some sense of direction, they agreed to pay the 7% and 12% discount to charity.

174.    A 10% of a price of a condo, then is about $100,000.00 for a one millions dollar condo, condo then has not risen in price, a 5 room HDB then is about SG$400,000, condo is slightly more, as they are private property not subject to HDB's flat restrictions.

COMPLAINT
- 23 -

175.    They did not even buy landed properties, ( Mdm Ching's landed property at Grange Road is at least SG $35 million, LKY's clan have no way to persecute Mdm Ching, so they misused public fund to persecute plaintiff in USA) yet they wanted to keep the hypothetical $12,000.00, and have to face forceful questioning from then Prime Minister Goh Chok Tong and were forced to "donate" to charity the 7% and 12% discount they had wanted to save (bribery in disguise).

176.    While Lee Kuan Yew and Lee Hsien Loong did receive equivalent to "bribes", the 7% and 12% discount was given to them because Ong Beng Seng wanted to get favorable treatments from Lee Kuan Yew and Lee Hsien Loong, for all his business dealings in Singapore. It is a savings, but in actual facts, Ong Beng Seng give them $7000.00 and $12,000 each for the principal sum/price, they do not have to pay; the other way the deal can be seen from a different angle is Lee Kuan Yew and Lee Hsien Loong pay full price, then Ong Beng Seng write a check of $7,000 and $12,000 each to Lee Kuan Yew, Lee Hsien Loong. If checks were written, then it would be bribes. They disguised it as discount/ savings that need not be paid. Just in form, the way the deal is structured, but in substance, LKY and LHL got advantage, pecuniary in nature each; free, free, but not free, they were forced to donate to charity.

177.    Lee Hsien Loong harbored ill will to this date and is vindictive in filing charges against Dr. Goh Jin Hian, the son of former Prime Minister, Mr Goh Chok Tong.

178.    Plaintiff avers that the sale which is bribery in disguise took place in December 1995, close to the bad faith academic dismissal in the following June 1996 was a cover to pass bribes to commit illegal acts against plaintiff. The defendants violated Foreign Corrupt Practices Act of 1977. (FCPA), as foreigners involved in bribing in USA in the above transactions and transactions that took place via defendant Olson.

179.    The auditor PwC at all material time is a party to the transaction.

180.    SG Government foreign Reserve at time of filing is at about US $417 billion. Punitive damage at less than 1/3 of total assets is permissible in California.

181.    Freezing of about 21.7 billion is justifiable, as plaintiff is making application for issuance of temporary restraining order, and preliminary injunction, preserving the status quo and preventing the defendants from using the huge assets and fund as bribery to harm plaintiff as such sum includes the bribes RM $5 million that belonged to the estate of Lim Peet Kwang.

182.    Bribery, accomplice, accessory after facts, conspiracy. AT&T, has involved itself in bribery as the channel and became the conduit for the passage of bribes and criminal money laundering, to harm plaintiff.

183.     Plaintiff avers that Cook County is run by Toni Preckwinkle from around 2010 till to-date. Cook County is liable as well as Toni Preckwinkle for the act of Toni Preckwinkle and not other employees, not based on respondent superior or civil rights 1985 Acts. By their accepting bribes and instructing others to perform the act, acting in conspiracy.

184.     Olson is at all material times, a partner of the law firm handling real property matters of the client, including GIC and GIC Re. Defendant Carp was the former President of GIC Re, and Tia is the present person in charge of real property investment, among others, in US.

185.     On information and belief, it is averred that attorney Olson from law firm Skadden, Arps, Slate, Meagher & Flom LLP has led many high-profile and transformative transactions, including both domestic and foreign assets and complex cross-border aspects.

186.     She led the largest real estate transaction announced in 2014, representing the Government of Singapore Investment Corp. (GIC) in its $8.17 billion acquisition of a portfolio of industrial properties from Blackstone. The acquisition transaction was named PERE's Global Deal of the Year and North America Deal of the Year for 2014.

187.     In year 2013/2014, plaintiff was in removal proceedings and was filing habeas corpus, petition for review, the Supreme Court of Illinois had notice that plaintiff who was assisted by Public Appellate Defender had no possession of Record of Appeals in Case No 13-0943. They knew of the bizarre and abnormal situations plaintiff was in. The inference is bribes were accepted.

188.     In addition to cross-border real estate transactions, Olson also is one of Skadden's preeminent real estate partners for M&A deals and has been the lead real estate advisor for numerous billion-dollar transactions.

189.     Ms. Olson has represented various clients on significant transactions, including: -  GIC in connection with (i) a take-private $15 billion acquisition, in partnership with Oak Street, of STORE Capital and a related $2.6 billion acquisition financing and (ii) a take-private $4.4 billion acquisition, together with Dream Industrial Real Estate Investment Trust, of Summit Industrial Income REIT. Entities involved:
Summit Industrial Income REIT is an unincorporated open-ended trust ;
Dream Industrial REIT (DIR);
Dream Summit Industrial LP.

190.     On information and belief, Nancy Olson and Blair Thetford of Skadden, Arps, Slate, Meagher & Flom LLP acted as legal advisors to GIC. e.g. it was reported as follows:

"GIC Real Estate, Inc. and Oak Street Real Estate Capital, LLC completed the acquisition of STORE Capital Corporation (NYSE:STOR) from Berkshire Hathaway Inc. (NYSE:BRK.A), BlackRock, Inc. (NYSE:BLK),The Vanguard Group, Inc. and others on February 3, 2023."

Store Capital Corporation

Type    Private

Services        Real Estate leases

Revenue         US$783.8 million (2021)

Net income

US$268.35 million (2021)

Total assets

US$9.7 billion (2021)

Total equity

US$5.1 billion (2021)

Owner •       GIC,    Oak Street Capital

191.    Store Capital Corporation (STORE stands for Single Tenant Operational Real Estate) is a private American real estate investment trust headquartered in Scottsdale, Arizona. The company was founded in 2011 and is based in Scottsdale, Arizona.

192.    In September 2022, Singaporean sovereign wealth fund GIC and American private equity firm Oak Street, a division of Blue Owl Capital Inc., agreed to acquire Store Capital in an all-cash deal valued at about US$14.7 billion.

193.    The 2022 is the latest efforts to thwart plaintiff's effort to overturn conviction pleaded in Cause # DC-24-04421 filed at Dallas County District Court of Texas. The present Illinois Supreme Court denied two motion for supervisory order and petition for review despite Finkle has committed perjury and the records of appeal in incomplete.

194.    GIC and DIR have formed a limited partnership, Dream Summit Industrial LP.

195.    GIC, GIC Re and LKY's clan have involved in bribery since the purchase and those purported sale and purchase and joint ventures are conduits for bribery offered to defendants herein to harm plaintiff.

Bribery : The form versus substance:

196.    The form of the transaction is just a disguise the substance is bribery. To commit unlawful acts as a chain starting from Dallas to elsewhere, and also in US.

197.    AT&T's sale in December 1995 coincided with the bad faith academic dismissal of plaintiff in June 1996, and later lawsuit filed by plaintiff on 3-19-2012, Case No. : 12-cv-264 at Eastern District of Wisconsin, United States District Court.

The huge assets for bribery, via AT&T sale and purchase via Olson were used by the Democrats , their agents, associates, representative against the non-parties Republican in the election and against plaintiff.

Intimidating plaintiff from accessing court

198.    The 3-20-2012 arrest by Thiel and false prosecution by Dane County in Case No. 2012FO000791, against plaintiff for rightfully claiming the loss and damage arising from the 1996 bad faith academic dismissal, was a vicious, baseless and malicious act after plaintiff filed on 3-19-2012, in Milwaukee Court, Eastern District of Wisconsin, Case No. 12-cv-264 suing Mark Griffiths and the Board of Regents of Wisconsin University System and others for the 1996 June bad faith academic dismissal by University of Wisconsin-Milwaukee, claiming, among others, special damage of $24,000 as tuition fees and living expenses in Australia and $3000 as the fees for the ticket for flights to and fro from US to Sydney Australia.

199.    After the 3-19-2012 filing in Milwaukee, the next day, on 3-20-2013, the defendant in Case No. 12-cv-264, Board of Regents of University of Wisconsin System, ordered the false arrest at law building lobby of University of Wisconsin-Madison, at city of Madison, about an hour drive from Milwaukee, and police officer Thiel arrested plaintif, without warrant,  in bad faith and charging disorderly conduct through a forfeiture complaint. The arrest report clearly stated she did not witness any acts of alleged disorderly conduct in person. And there is no conviction which is a pre-requisite to file forfeiture complaint to forfeit property of plaintiff. They did not bring plaintiff for a hearing before a Court after arrest as is required. The judgment in 2012FO00791 is void

200.    Case No. 12-cv-264 was dismissed, without prejudice, for failure to prosecute in July, 2012, as plaintiff was too busy with many things, and failed to serve the defendants.

201.    The other bribery "link", Nancy Olson, a Chicago lawyer is in a safe harbor in Chicago, as the Supreme Court of Illinois, which was involved in the bribery in bad faith prosecution, Case 12CR18264, of plaintiff will not discipline those lawyers bribed by LKY's clan, as they themselves accepted bribes by denying two motions for supervisory order, a petition to Review, when plaintiff made the central arguments that Finkle committed perjury in his motion to dismiss appeal as moot due to plaintiff's restoration to fitness.

Events demonstrating conspiracy:

202.    On 7-11-2014, Kimberly Mattei, APN of psychiatry, of Crusader Clinic, Rockford, faxed the Medical reports to Paul Addotta, the parole officer, while plaintiff was on parole, living in Rockford, Extended Stay America Hotel, Rockford, Illinois. As a condition of serving parole, plaintiff was living in the city of Rockford in Illinois. Plaintiff's loss and damages include the expenses of living in the hotel from about June 2nd 2014 to about late May 2015, about $11,570.18. The state street hotel is near to Starbuck and a Japanese restaurant and close by Vietnamese restaurant.

203.     Plaintiff had never informed Kimberly Mattei that plaintiff was on parole and the identity and fax number of Paul Addotta. That was in Illinois.

204.     Across the border in Janesville, Wisconsin, 11-2-2016, Justin Marko, a psychiatry counsellor, identified and described plaintiff as "C" in the medical reports. C is the third alphabet, implying or insinuating plaintiff's third class law degree.

205.     In California, Plaintiff filed motion for fraud on Court , motion for judgment on the pleading, motion for sanctions and motion to produce financial statements in Case No. SC112269, against Ronald Hacker and Bag Fund, LLC, were denied on February 2, 2023 by Judge Lisa K Sepe-Wiesenfeld.  The judgment is also void for bribery.

206.     Around June 2021, Google, LLC also deactivated plaintiff's email . In addition, they invalidated petitioner's email khorchin.lim@gmail.com on or about 4-26-2021, and when petitioner sought to reinstate the account on 9-12-2023, they imposed a condition of 30 days purportedly to check and verify petitioner's identity.
Khorchin.lim@gmail.com, deleting huge amount of email, data, attachments to emails, efiling information of court documents information and resulting in the inability to retrieve those records and filing history, and numerous email correspondences with attorneys, opposite party counsel, including Amir Sam Dibaei, all crucial and critical information in the pending lawsuits.

207.     The Illinois Supreme Court was aware of the abnormal situation plaintiff was in, that is plaintiff has no copy of the records of appeal filed by the Clerk of he Circuit Court. Plaintiff public defender attorney from Office of Appellate defender, Lester Finkle did ot mail copy of the records. So Plaintiff could not proceed with the Petition To the Supreme Court of Illinois.

Post Lee Kai case: incidents in Singapore
208.     On or about 1992/1993 immediately after the decision, LKY's clan hired hitman to throw brick in toilet attached to and outside law library of National University of Singapore.
[Persons/individuals involved: LKY's clan, Ho Peng Kee, Tng Soon Chye, Lee Fu Nyap, Wong kah wha, Chong Kuan Keong and others]

209.     In 1994, Commercial Affairs Department, Ministry of Finance, incident; thee were false arrest, false and unlawful extradition from Malaysia; False charges of three charges filed, including a charge of mandatory whipping of three strokes of caning.

Illegal handing back of passport by LKY's clan.
[Individuals involved: LKY's clan, Lawrence Ang Boon Kong, Roy Neighbour,  Yeo Poh Teck, Rosalind Chong Kooi Ming, Wilfred Nathan, Yeo Pia Jee, and others]

210.    After charging plaintiff, as plaintiff were about to mail out notes about Lee Kai case, LKY's clan got plaintiff's sister to call plaintiff while plaintiff was at the post office near Padang in Singapore about to mail the notes. They had spied on plaintiff while plaintiff got the notes printed by a local printer. After getting the call, Plaintiff did not mail and immediately thereafter, LKY's clan unlawfully returned the passport to plaintiff. Plaintiff left Singapore

211.    Later in 2011 they withdrew the charges.

Post Lee Lai Case: In USA
Events in 1996 June: University of Wisconsin-Milwaukee, bad faith academic dismissal.

They fabricated the unofficial transcript. It is about the bad faith academic dismissal in 1996 that led plaintiff to file lawsuit in 2012 in the above-mentioned Case No : 12-cv-264.

As events involving false evictions, cases filed in Dane County Court, and in Eastern District of Wisconsin, and the Seventh Circuit, (including BMO bank, 11-c-666, appeal to seventh circuit, duplicative, one proceeded to briefing, the other dismissed as unnecessary early),  plaintiff has no "court system" to access and to file lawsuits that is feasible to seek redress and relief from Court.

In 1996/1997: plaintiff was at University of New South Wales, Sydney and University of Technology, Sydney.

212.    LKY's clan involved in bribery , bribed the individuals, Democrats in USA to falsely admit plaintiff into University of Wisconsin-Milwaukee in 1995 and after one year,  in 1996 June, academically dismissed plaintiff. In University of New South Wales aided Kam Fan Sin, assistant professor of the LLM "Unit Trust" course to mention about throwing of brick from the sky.
-1997, University of Baltimore, Dennis Pelletier
-1998, California State University-Hayward, events

213.    There were false lab reports by Quest Diagnostics, Inc while plaintiff was attending California State University -Hayward.

-2011 false eviction by Hellenbrand,  2011, false promise to employ by Ronald Hacker, lawsuit SC112269,

214.    False prosecution in Case No 12CR18264 by Cook County District Attorney. There were abusive stamping , a result of collusion between the court and prosecutors. The judgment is void.

215.    The Chicago is where defendant Rahm Emanuel was the Mayor, and ex president Barack Obama was then the president and he appointed the Judge Jorge Luis Alonso to be article 3

judge at the United States District court. Plaintiff pled guilty on 7/16/2013 and immediately around 2014 Judge Alonso was appointed.

216.    There were false arrest at Oakland around 2003/2003, the arrest was sealed after plaintiff filed petition in 2006 as being innocent. Plaintiff is suing the relevant party in Case No DC-24-04421.

217.    And all were part of the claim in Dallas county, Case No Cause # DC-24-04421. The later events in 2021 to 2023, when plaintiff filed for Supervisory Order, also related to the appeal in Case No. 13-0943, in 2013, Illinois Supreme Court, although with only the present Chief Justice still on the bench, they all dismissed plaintiff\s two motions and the Petition For Review.

218.    When Google deleted the email, plaintiff could no longer download all e-file cases at State of Illinois using the gmail account. It includes Case No 12Cr 18264 and claims against Metcalf & Associates, P.C.

219.    The wiping out of those emails and others by Google, LLC, in conspiracy, with the view to destroy the evidence of wrong doings of the conspirators.

220.    It is not necessary that the co-conspirators should have joined the conspiracy at the time of its inception; everyone who enters into such a common design is in law a party to every act previously or subsequently done by any of the others in pursuance of it.

221.    As conspirator of LKY's clan, AT&T, and Nancy Olson and aiders, abettor, each of the defendants is liable for all the conspiracy, including the bribery, the "distribution", accessory before or after facts of crimes, regardless of when the defendant join the conspiracy.

Jurisdiction exists
222.    There exists actual or constructive notice on the part of each defendant that the conspiracy and bribery originated from Texas with the Defendant at forum states, i.e. Tex Dem and AT&T Inc, constitutes contact with the forum state that supports jurisdiction. LKY's clan and including Democrats have the notice and or knowledge that they will be sued at this Court as the conspirator of for their conspiracy. The defendants New York State Board of Law Examiners, NCBE and others have the actual knowledge or constructive knowledge and the bribery which took place in Dallas, Texas, and their action is an unbroken chain of actions.

Drawing of inference:
223.    In the conspiracy of the defendants, it is permissible to draw "the inference of agreement from the nature of the proposals made . . .[and] from the substantial unanimity of action taken upon them by the [defendants].

COMPLAINT
- 30 -

The inference of agreement:

224.    The motive or reasons ( as appeared hereinafter) and the huge sum of assets controlled by LKY's clan and their influence, the control over government's reserve, through the vehicle Temasek Holdings Pte Ltd, GIC, etc, with Lee Hsien Loong at helm of GIC and his wife Ho Ching at helm of Temasek and directing the purchase and investment, disguised as investment, and channeled the fund for bribery, the disguised purchase of real property, the contacts, the use of Chicago, Illinois where Democrats have been heavily bribed, to send bribes, the timing, etc, all circumstances taken into consideration, allows the drawing of inference that there is conspiracy.

225.    Inference can be drawn about conspiracy between the parties in California, California Bar Exams and New York, New York Bar Exams, and Wisconsin where NCBE is located, from 1995 to 2012, almost 17 years opening in between. In 1995 MPRE raw score of 31 (scaled score of more than 86) reported in California and in 2021 scaled score of 70, reported to California, a difference of at least 16 scaled score points by NCBE located in Madison Wisconsin. And NCBE had refused to produce the MPRE Answer written by Plaintiff which is a multiple-choice scantron.

226.    The same occurrence or events of parties bribed by LKY's clan,  as Plaintiff is a Malaysian citizen, lived in Singapore from 1980 to 1995, and from 1995 to present day in USA, except in 1996/1997, Plaintiff was living in Sydney, Australia.

227.    Plaintiff avers that AT&T, Inc. has engaged in fraudulent concealment and fraudulent SEC filing in Form 10K, annual reports from financial year ending December 31, 1996 to Financial year ending December 31, 2022 and it is continuing. The bribery is fraudulently concealed.

228.    The defendants have acted in concert. There were overt tortious or unlawful act, committed as a results of accepting bribes, and the source of bribery is the transaction that was disguised as real property purchase, which in form is purchase but in substance is bribery, to further the plan of all the conspirators.

Allegation of Conspiracy (i.e., also pertinent, applicable to personal jurisdiction):
229.    Defendants conspired fraudulently , concealed the bribery. Lee Kai case, decided by LP Thean well known as a better lawyer than Lee Kuan Yew and appointed by former Prime Minister Goh Chok Tong, extended his tenure twice, after snubbing LKY's clan , they ended with "one".

230.    In 1996, AT&T, has involved itself in bribery by Singapore late Lee Kuan Yew and Lee Hsien Loong, Lee Hsien Yang, then CEO of Singapore Telecommunications Limited and commonly known as Singtel, in 1995/1996 in the disguised sale of AT&T's real property in

Chicago to Singtel, the channel became the conduit for the passage of bribes and criminal money laundering, to harm plaintiff. It accepted bribes channeled by LKY's clan via this mode, and criminal money laundering, to harm plaintiff.

231.    And later with Olson as conduit for bribery.

First overt case of bribery: Academic dismissal at UWM

232.    LKY's clan continued their persecution of plaintiff into US. In 1996 in Milwaukee, Wisconsin, USA. First early Overt act of bribery in 1996;  LKY's clan caused bad faith academic dismissal by UWM

233.    Plaintiff was admitted, "probation admit",  MS Financial Analysis, to commence in Fall 1995.   I-20, the document issued by University to international student was duly issued. Plaintiff was enrolled, as suggested by the enrollment advisor into Bus Adm 795, "Fixed Income Investment", an elective class attended by those graduating the next semester.
At UWM, it is the enrollment, probation admit, 1995 Fall semester, around end of august, early September 1995, graduate school of business, jump the queue the direct enrollment in Bus Adm. 795, an elective class, while plaintiff has plenty of classes to complete before proceeding to the elective class Bus Adm 795. "Fixed Income Investment". Plaintiff completed the first semester. Elective class is usually undertaken after completing all required classes and student chooses the elective to fulfill the number of credits requirement in order to graduate.

234.    Probation admit allows the UWM to academically dismiss on much easier grounds. Compared to student at undergraduate school, even if the GPA falls below 2, the student can take additional class to raise the overall GPA and graduate at GPA 2, with a little delay, but not academic dismissal, which entails writing off all payments made, course credits earned, perhaps for the preceding 3 and a half years, and efforts, time and costs all wasted.

235.    At UWM, at 2 credits per class, plus the accounting foundation class that plaintiff was required to take, plaintiff's estimated time to graduate is about two years.

236.    In Graduate school, a total of 30 semester unit, based on 3 credit each class is required in order to graduate. Thus, a typical graduate program, at 12 credit per semester, will take 3 semesters to complete and graduate. While at University of Baltimore later in 1997, plaintiff enrolled "full load", 15 credits, the maximum credits that university allows student to enroll, can't enroll in 30 credits and graduate in one semester, but due to the lawsuit against the Board of Regents of University of Wisconsin System, plaintiff was compelled to seek psychiatrist treatment, in order to withdraw from all classes enrolled, at 15 credits, more than tuition of $5000.00 dollars was refunded, but not the fees, of less than $300.00

237.    In the second semester, 1996 Spring semester, plaintiff enrolled in 2 classes with Associate Professor Griffiths, a Canadian then. Asso Prof. Griffiths at the second week or so, stated that he would hand out a take home exam, and the take home exams is not going to be the same. He initially stated the total points is 20. Later, he changed it to 15 after the answers were graded. He finally graded plaintiff 5/15. And returned the answers in the sequence of highest marks to the lowest and plaintiff with 5/15 was the last person to get the graded answers. It looks like a circus of humiliation. He also wrote on the Answer scripts that plaintiff should see international student advisors.

238.    UWM's dismissed plaintiff on academic grounds, by grading 2 "F" for courses, both by Griffiths, (i) Investment and (ii) Financial Strategy, from graduate business finance school. By grading 5/15, the lowest in the class, during the beginning of the term/semester, Prof Mark Griffiths, stated plaintiff should see the international student advisor. And distributed the graded answer scripts in the order of purported merits, and plaintiff got the lowest of 5/15, thus, got the graded answer last. In Maryland District Court, in Baltimore, plaintiff filed Case No : 97-Cv-331.

239.    Griffiths wrote on the answer script, stating that Plaintiff should see an international student advisor. Plaintiff has spent first semester there, and that was the second semester . Plaintiff had another class, Investment, with him. And he similarly included numerous questions on the mid-term, most of which were not similar in the text and required other concepts to solve the problem. He also failed Plaintiff for the exam, on the course "Investment". He never disclosed how the others performed in the Investment class. But for the 5/15, he announced in class that the lowest is 5 and the highest is 12, he handed out the answer scripts in the order of the highest score, from the highest to the lowest score. Plaintiff being the last person to get back the answer script and the grade. He was determined to humiliate and cut short plaintiff's study. In 1997, Plaintiff filed a case, Case No 97-CV-0331, in United States District Court, Maryland, against among others, Mark Griffiths.

The F was changed to W, after plaintiff wrote to UWM to apply to complete the degree.

240.    The unofficial transcripts demonstrates the bribery , LKY's clan, democrats continued from 1995 till to 2020/2021, and to date.
The graduate program was fraudulently changed from MS Financial Analysis to MS Management.

241.    The fraudulent unofficial transcripts as events taking place after the initial fraud of bad faith academic dismissal, confirms the initial fraud
With no prospect of being able to stay in USA, plaintiff quickly applied for law school, LLM degree in University of New South Wales in Sydney, Australia. Plaintiff was admitted into the LLM program. Among the courses is a "Unit trusts" by Prof. Kam Fan Sin, who just obtained his

Phd in law from UNSW, a dissertation based on equity, who wrote the book, "The Legal Nature of the Unit Trust - Kam Fan Sin.

242.    Since Prof Kam seems to imply, saying something from the sky, the incidents involving Ho Peng Kee, Tng Soon Chye and LKY's clan, plaintiff claims against the defendants, attempted murder, criminal conspiracy for act done in Singapore. Plaintiff could not continue the courses and transferred to MBA program at UTS, University of Technology Science, Sydney in the first half of 1997 and at the end travelled back to US in July 1997. And later back to University of Baltimore in 1997, Baltimore, Maryland.

243.    Plaintiff incurred the tuition fees for the LLM and MBA of about $12,000 and living expenses of $12,000, plus the to and from airline tickets, of around $3000.00, totaling $25,000.00

244.    Plaintiff returned from Sydney, Australia to Baltimore in July 1997, and filed the lawsuit Case No. 97-cv-331 at Baltimore, US District Court in Maryland, against the Board of Regent of University of Wisconsin System and Mark Griffiths and others. There were incidents in Baltimore.

245.    Plaintiff enrolled at University of Baltimore,  MS Finance. Enrolled in 5 classes. The semester just started, a classmate contacted plaintiff to have a group meeting to discuss, an unusual event at the beginning of the semester, as there is nothing to discuss as classes have not yet started. During the meeting, Plaintiff had a slight verbal disagreement with a student in a group and they ganged up and accused me and reported to Dean of student affairs. Plaintiff had paid the tuition fees of a full load study, i.e., 15 credits, 5 classes of 3 credits each class, in excess of $5000.00 over dollars.

246.    The Dean of student affairs, Dr. Pelletier, asked somebody, it was the university police, to contact plaintiff immediately and while in his office, told plaintiff that he spoke with a few of the students, and he needed not talk to all of them, and that he has spoken with the finance professor of the class for the group, who agreed with his decision, banned me from all 5 classes, instead of asking me to change to another class, or register in another class. He also got hold of university police to talk to plaintiff. It was excessive harassment.

247.    With the prospect of losing all more than $5000.00 dollars looming and imminent, Plaintiff decided to pay the insurance premium for health care insurance, covering psychiatrist treatment.

248.    As an international student, plaintiff has to engage in full time study, every semester, without fail, except summer. In order to get refund of the tuition fees paid, plaintiff decided to get letter from psychiatrist. Since other typical, less serious physical illness does not usually last the whole semester.

249.    Plaintiff then went to see Dr Carlos Milan, obtained his letter, he sent in the letter to request that plaintiff be excused from attending due to illness. With the documentation in place, the university refunded the tuitions, but not the $200 over dollars fees, including activities fees, etc. The loss is the $200 fees over plus another less than $200 for insurance premium.

250.    The lawsuit, Case No. : 97-cv-331 had prompted University of Wisconsin to call University of Baltimore and they unreasonably blocked plaintiff from attending all classes. Had plaintiff misbehaved, they could have expelled, suspended or carried out anything administratively possible. But what he did was, plaintiff could continue with activities, could use the campus facilities, play basketball in the campus, but not attending any classes. A partial "suspension" for the whole semester, effectively trying to make plaintiff incur the loss of over $5,000.00.

251.    Feeling helpless and faced with the hostile environment, plaintiff was compelled to discontinue the lawsuit, plaintiff had filed motion for summary judgment, but while the court was considering the motion, and none of the defendant has filed appearance, plaintiff filed Notice of Voluntary Dismissal, without prejudice. The defendants needed not file Answer, with the pressure mounted on plaintiff by them, plaintiff have to leave the university and transferred to California State University-Hayward (CSU-Hayward, now CSU-East Bay).

252.  From University of Baltimore, plaintiff transferred to CSU-Hayward,  California

(ii) second overt 1998- 2003 :
Excessive blood draws, bad faith liver biopsy referral

253.    At CSU-Hayward, from 1998 to 2002, there were many incidents. Dr Mark Khoo, a Malaysian, Director of Student Health Services at CSU-Hayward, who stated he has a sister in Singapore and knew what was going on in Singapore.

254.    At CSU-Hayward, there were many incidents. Dr. Khoo recommended liver-biopsy, and constant blood draws, to later Prof Robert Lin's remarks in class about illegal eviction by Ray's Sushi, Inc. which caused plaintiff to stop the MBA course and transferred to De Anza College. Plaintiff filed lawsuit against the Quest Diagnostic Inc., and Dr Khoo at Eastern Wisconsin District Court.

255.    Quest Diagnostics Inc. had fabricated the blood reports and stated that Plaintiff's Ferritin is 619 when the normal range is 14-179, which Dr Khoo stated plaintiff suffered from a rare kind of excessive amount of ferrous (iron) in plaintiff blood, the disease which is only happening in European people, hemochromatosis, and what he was implying was plaintiff has an iron like skull which could withstand the throwing of brick. 201.  He has suggested constant blood draw because he alleged that zypreza could possibly cause damage to the liver.

COMPLAINT
- 35 -

256.    At the clinics, plaintiff's medical records of Dr Mark Khoo and that of psychiatrist, Dr Frank Van Orden were kept together, separate folders but Dr Mark Khoo has access to them. Plaintiff filed lawsuit in Eastern District of Wisconsin, United States District Court, Case No 11-cv-875, claiming against Dr Mark Khoo and Dr Frank Van Orden, who was aware of the constant, almost weekly, excessive blood draws by Dr Mark Khoo.

257.    Dr Frank Van Orden has advised on the possible side effects, of Zyprexa, includes tardive dyskinesia, i.e., facial muscle involuntary twitching. He was considering alternative medication for prescriptions, but settled for Zyprexa, first prescribed by Dr Carlos Milan.

258.    Later in 2011, Plaintiff filed lawsuit in Eastern District of Wisconsin, District Court, Case No: 12-cv-875,  against Mark Griffiths, Frank Van Orden, et.al., were dismissed, But the lawsuit was dismissed , it is believed for lack of personal jurisdiction against Dr Mark Khoo and Dr Frank Van Orden.

Robert Lin

259.    At CSU-Hayward, after completing Bachelor of Computer Science, in June 2000, plaintiff went on to attend MBA (Accounting). In around June 2002, Prof Robert Lin's remarks in class about illegal eviction by Ray's Sushi, at around the 6.30 pm class earlier noon time illegal eviction, caused plaintiff to stop the MBA course and transferred to De Anza College. The MBA was aborted. Plaintiff has suffered loss and damage.

260.    Ray's Sushi Inc. caused illegal eviction in the lunch time when plaintiff went there to pick up the ordered lunch. And later at 6.30 pm, Associate Prof Robert Lin at the beginning of the accounting class, alluded to Ray's Sushi 's illegal eviction and said "We all know what happened at the nearby restaurant in the afternoon.",  The then the story that the father in law has an extra-marital affairs with the wife of the son and when the son quarreled with the father, the father evicted the son. Plaintiff raised hand at the end of class and asked him who he referred to and he denied anything.

De Anza College: Democrats involvement is revealed:

261.    A history professor who claimed to be a Democrat in class, a Taiwanese, stated that he is a traffic court judge part-time, or some sort of judge, not a full time judge, graded plaintiff a "D" for the history course, he claimed he was appointed by Democrat to the position. And a lady instructor refused plaintiff to stay in the class for no reasons at the beginning of the course.

The illegal arrest at Oakland City in 2003.

262.    Around 2002/2003 LKY's clan and Democrats got hold of somebody to advertise in the Chinese newspaper for the sale of cell phone at Oakland China town. Plaintiff visited the store but some one called the police. Plaintiff went to the other side of the store to purchase a DVD player imported from China, returned to the car park. Later Plaintiff returned to the front of the

store and was arrested by the police and detained for about 8 hours. Prosecutor decided not to file charges and plaintiff filed cases in district court.

263.    The arrest report was sealed in 2006 after plaintiff filed petition to seal based on innocence. City of Oakland is liable for the actions of the police officers for false arrest and false imprisonment and all related causes of actions.

264.    Plaintiff went to Rock Valley College in 2004 to complete the prerequisites for BSN, Bachelor in Nursing at University of Dubuque. In 2005 plaintiff attended University of Dubuque and graduated in 2007. Plaintiff's late father passed away in 2007 and late mother passed away in March 2024.

265.    In 2009 plaintiff attended Devry University, MS, Accounting and Financial Management.

266.    On December 2, 2009 plaintiff became permanent resident.

267.    In 2010/2011 plaintiff with family went to look for job in Los Angeles.

**(iii) Third overt case : 4-8-2011, SC112269**
Case: Ronald Hacker and Bag Fund, LLC, Case No. SC112269
268.    While in Los Angeles, LKY's clan through bribery caused Ronald hacker to make false promise to employ, failed to make payment for salary, being oppressive and filed unmeritorious motion to deem plaintiff a vexatious litigant, with the help of California democrats and bribery. The clerk mis-labeled the case as SC112269, it was done intentionally as the label SC is acronym for Small Claims.

12-27-2011, eviction by Hellenbrand. Bribery of public official, Judge Albert, a criminal act, **false eviction defendants**
269.    On 12-27-2011, Hellenbrand obtained a default Judgment evicting plaintiff, while plaintiff was not around, travelling in China. Plaintiff on 11-17-2011, left USA; and 1-27-2012, returned to USA.

270.    Plaintiff filed motion to set aside default judgment, based on among others, excusable neglect. Hellenbrand's attorney, Koritzinsky, emailed and mailed copy of "retainer" to plaintiff, Koritzinsky did not file appearance in Court, as a result he has no standing in the setting aside default judgment hearing. his presence in Court is futile, Hellenbrand was not represented at the setting aside default hearing, and judgment denying setting aside is void.

271.    On or about 11/23/2011, Hellenbrand had purported to deliver a "5 day notice to cure" while plaintiff was travelling in China. After the alleged time in the notice expired, Hellenbrand proceeded to file a Small Claim eviction case pro se.

272.   Hellenbrand filed a complaint which failed to state a cause of action.
He alleged failure to cure 5 day notice. There was no pleading of tenancy, oral or written, no pleading of "breach of contract". There is no cause of action pleaded and the judgment is void.

273.   LKY's clan through bribery caused the BMO to falsely deposit plaintiff's check in someone else account and labeled the monthly statement in related to the sum of $26,300 a backdated "Provisional credit" and inflated the sum. Plaintiff filed lawsuit against the bank and its parent company BMO Financial group, and Mr Goh Chok Tong, the former Prime Minister of Singapore, under the wrong impression that Mr Goh was the person causing the problems.

274.   On or about 6/27/2011 a check for the sum of $26,300.00, drawn by Nicholas Khor Lim, plaintiff's youngest brother, with Plaintiff as payee, a check by BMO Harris Bank was tendered for deposit into plaintiff's checking account No. 57177230 also at BMO Harris Bank at Madison branch of BMO Harris Bank N.A. (a wholly owned subsidiary of BMO Financial Group). It was fraudulently misapplied into another savings account No. xxxxxx7538, which does not belong to plaintiff. Plaintiff later went to Janesville branch at Creston Park, to make inquiries. On 6/29/2011, the online statement of plaintiff checking account showed a "Provisional credit".

**Bribery :judgment is void.**
275.   In cases where bribery is involved, judgment is void. *People V. Hawkins* (1998), Supreme Court of Illinois. No. 82112, Decided: January 29, 1998.

276.   Bribery: judgment is void. *People V. Hawkins* (1998), Supreme Court of Illinois.
No. 82112, Decided: January 29, 1998
case of overt bribery: **BMO judgment** void. Also the issue is not moot, federal issues involved in 11-cv-666

Fifth case of bribery: EZ Win  : **car insurance theft defendants**
277.   After BMO lawsuits and lawsuit against Hacker, more  incidents happened.
-on 9-27-2011 plaintiff checked in to EZ Win All Motel at El Monte, for a week stay.

278.   The employee of EZ Win All Motel stole the plaintiff's proof of insurance while plaintiff was taking a shower. Rong Sheng, Inc, is among the corporation owned the motel.

279.   On 9-29-2011, car accident,  at around 6.30 a.m. Jose A Orduna intentionally hit plaintiff's car travelling at around 10 miles an hour in Santa Monica, close to the Court where plaintiff was going to have hearing in SC112269 against Hacker.  Citation was issued by police officer, Brent Wilkening, at Santa Monica, who appeared immediately and asked plaintiff for proof of insurance and stated that plaintiff has none. He proceeded to issue Citation **No: 630983,** Notice To Appear: for misdemeanor, which is void, as it is an infraction, for not possessing proof of insurance and left out information about the speed of car before the accident. At Value Car Rental, Inc., the car rental company had asked if plaintiff has car

insurance and plaintiff said yes and so did not rent the car with the car insurance of Value Car rental. Ron Hacker and others, including Democrats took advantage of the opportunity, stole the proof of insurance while plaintiff booked into Ez Win which plaintiff had booked by telephone earlier and they created a car accident , an intentional hit, on 9-29-2011 to cite plaintiff for not carrying proof of insurance.

Orduna followed on plaintiff's passenger right side and knocked onto the passenger side, and damaged the passenger side door and the rear end facing mirror.

280.    The citation intentionally left out the speed of car. Travelling at around 10 mile/hour,in the still dark early morning in Santa Monica. It is impossible that he could hit onto plaintiff's right side of the car, just like Vianey Domingue did in 2023. They were in full control and hit purposely.

281.    Clerk of Circuit Court of Cook County, Iris Martinez, and / or the deputy clerk acting in conspiracy and aided and abetted by the Democrats of USA, stamped many documents fraudulently.

**3-20-2012: overt case of bribery**: **Dane county disorderly conduct  defendant**

**Abuse of process: Case No.: 2012FO000791, Forfeiture Complaint**:
282.    A day after the filing of lawsuit, plaintiff was arrested on 3-202-12 by UW-Madison police, shelly Thiel. There is no citation. No citation Number.

283.    Plaintiff filed lawsuit, Case No 12-cv-264, in Eastern District of Wisconsin, District Court of United States, on 3/19/2012 against Board of Regents of Wisconsin, which manages UW University system, including UW-Madison and UW-Milwaukee. .

284.    At UW-Madison, The UW Board caused UW Department of Police, police officer Thiel, to falsely arrest Plaintiff the next day on 3/20/2012.

7-22-2012, Milpitas arrest: and Yok Law lawsuit

285.    On 7-22-2012 arrest by Milpitas Police Department. Yok Opened the door.
At 170 Rose Dr. Police interfered twice in the disputes with Yok Law. First a lady police left her name card on the metal door of the main house, the groove on the horizontal bar and at the back asking plaintiff to call her without stating why.

-July 2012, Elk Groove village filed charges. Fleeing and eluding.
286.    At Elk Groove Village, the police worked to retaliate against plaintiff for the disputes with the local hotel/motel owner, Days Inn, who refused to refund the money. Plaintiff paid for one month stay.

287.    More than $800.00 was due and owing, after setting off costs of some damaged items. The damaged items, principally the bed, the bed has just some scratches on the surface and not significant damage and part of the plastic drainage system under the sink of the bathroom. Plaintiff paid, it is believed at least $35 * 30 days, or more, i.e. $1050.00, was paid;  the damaged drainage system under the sink, all plastic parts, would not have costed more than $200.00 to assemble and fix. Thus, $1050-$200=around $850.00, still due and owing.
In any event, they did not suffer any damage after setting off.
The police has no reason to check on plaintiff as plaintiff's car was parked at night at near Starbuck. The patrol car stopped a distance slightly at an obliqued angle, parked not directly behind, so that plaintiff could not check on the rear mirror what he was doing.

288.    It was a large carpark that could accommodate more than 47 cars. He approached plaintiff's car, knocked on the car door and asked to roll down the glass window and asked plaintiff for the driver license. Plaintiff gave him the driver license. He checked for a long time, and never returned.

289.    By statute, the police are required to retain any audio, or video recording of traffic stop "made as part of the arrest " by squad cars equipped with recording devices, and such recordings may be destroyed only upon final disposition and an order by the trial court." 720 ILCS 5/14-3.

290.    Plaintiff was afraid of being arrested unlawfully, left the car park. The police followed, with siren lights on and he called for support. Plaintiff stopped in front of a gas station, directly in front of the gate. The police stopped behind, but did not blocked plaintiff's car. Another police car appeared and stopped at the right side, but not parallel, slightly back.

291.    The police who took plaintiff's California driver license, approached plaintiff's car door. At the window, he demanded plaintiff to turn off the engine and exit the car. He later drew out the baton, and threatened to break the glass window. While another police pushed the car body on the right side, above the front right wheel, near the front right lamp. It caused the car to shake.

292.    Plaintiff feared that the threats by police to break the glass window and the breaking of glass window would cause injury to plaintiff if he were to break the glass window.  Plaintiff backed out from the car park of the gas station and went on to local road and then onto Highway I-90 East towards direction of Chicago.

293.    The two police cars gave chase, on the local road then onto I-90 East, but they later gave up. They later got a warrant issued , Warrant number as appeared on the police reports of 12CR18264. While early in detention at the General Population at Cook County Detention at Chicago, the prisoner guard, after inquiry from plaintiff, checked on the computer and stated that there was a hold and plaintiff can not be bailed out. The warrant is dated August 30, 2012.

294.    The motion form speedy trial was filed in 2013 while plaintiff was at Dixon Detention Center after the plea of guilty.

**-9-15-2012 prosecution filed at cook county, 12CR18264, : Cook County Defendants**

295.    Summary of Fraud :

1. Complaint charging misdemeanor was removed from records.
2. Property Index filed by Police officer Sollis on 9/16/2012 has no evidence of Molotov Cocktails. There is no crime committed.
3. Index of Case 12cr18264, the starting date of events was changed from 9/15/2011 to 10/3/2011.
4. Finkle's motion is perjury.
5. Stamped pages on second Petition, by Deputy Clerk in collusion with Prosecutor, Kimberly Foxx.

Parties who wishes to use the Judicial System to settle the disputes have the responsibilities to tell the truth. *ABF Freight Sys. v Nat'l Relation Labor Bd*., 510 U.S. 317 (1994)

296.    Cook County, the elected leader in 2012, and City of Chicago Mayor are liable as conspirator as there is no vicarious liabilities for acts of their employees, in the case of Cook County, the County officials and in the case of City of Chicago, the police officers, Sollis, Rodriguez, Mills, and Jerome.

297.    On 7/16/2013 plea of guilt, on 7/18/2013 was transferred to Illinois, Stateville Detention Center, where they decide which penitentiary to send plaintiff to and on 7/25/2013 arrived at Dixon Correction and Detention Facility, ("DCDF"), State of Illinois Penitentiary.

Case of bribery :  immigration Removal proceedings : Metcalf Pc, Metcalf, Kola and ; deportation defendants.

298.    Clerk Dorothy Brown submitted fabricated index to the Immigration Court, and in the appeal Case No 13-0943.

299.    Patrick Metcalf and Isuf Kola, **committed perjury**, in the affidavit filed in Wisconsin Circuit Court. They have no defense to any claim.

Perjury: 1. No business in Wisconsin, no minimum contacts, no personal jurisdiction, but did have contacts. Minimum contacts for personal jurisdiction are as follows:
(a) advertisement placed by Metcalf in Mandarin, in Chinese newspaper stating a Ms Ye could do the translation into Chinese. The newspapers targeted Chinese reading audience, was found in Wisconsin.

(b) Ms Helen Yu's (the secretary of Metcalf) initial letter addressed to Dodge County Detention Facility ( "DCDF") at Juneau, Wisconsin.

(c) Fax signed by Metcalf, faxed to DCDF at Juneau, by "Metcalf/Annie", addressed to plaintiff, stating he would call plaintiff by telephone at Juneau and did call. He did business in Wisconsin.

(d) Notices of hearing faxed by Metcalf's employee (Annie) to Plaintiff at DCDF.

(e) Plaintiff's letter with "Additional defense" sent to Immigration Court and ICE, was rejected by Immigration Court, and sent back to Plaintiff, and cc : to Metcalf and Chief Counsel : Patrick McKenna. Metcalf then filed Motion To Terminate Removal Proceedings, dated April, 14 2014.

(f) Remote hearings conducted by computer, plaintiff appeared via computer, while plaintiff was at Dodge County Detention Facility, and Metcalf was at Chicago, Immigration Court. Initially, there were a few hearings, via computer that were held via remote attendance.  He did have contacts when hearing held at the same time, Metcalf at Chicago, plaintiff at Juneau, Wisconsin.

(g) Metcalf practiced federal immigration law at other Immigration Courts, at elsewhere other than Illinois.

Perjury 2: "Isuf Kola is not attorney of Plaintiff " (by Patrick and Kola)
Both denied Isuf Kola was attorney of record of plaintiff. The website of Metcalf, PC in the 2011s, did state Isuf Kola is "Of Counsel".

Letter of 7/15/2021:
1. Metcalf stated "Aggravated Felony" and "United Nation Charter Against Torture".

But: order of 5/21/2014 stated "withholding of removal". Order of Court dated 7/29/2021 stated was "Firearm Offence" and "withholding of removal"

It was firearm offense on the Notice To Appear (charging documents) and the remedy (Immigration Relief) is Withholding of Removal.

Not aggravated Felony and UN Charter against Torture.

300.    The hearings are all audio recorded, including the hearing held on 2-20-2014.

They both denied Isuf Kola worked on the case. But Isuf Kola appeared on 2-20-2014 His office is at Glen Ellyn and according to Metcalf's website, Kola also formerly worked for the government. Glen Ellyn is closer to Chicago, and Kola could avoid traffic travelling to Chicago. Metcalf at Hoffman Estate is 30 minutes away from Chicago with no traffic jam. But early

morning traffic rush into the Chicago "loop" means Metcalf have to leave office very early to attend the morning immigration Court hearing.

301.    However Kola is "of Counsel" of Metcalf & Associates, P. C. as it appears on the website and during a early hearing via Computer distance appearance at Dodge County Detention at Juneau, Wisconsin, Juneau, Wisconsin,  whereas the Immigration Court is in Chicago, Illinois. Kola appeared on behalf of Metcalf to request continuance of hearing to deal with the criminal case, to seek to set aside the conviction based on issue of fitness to plead guilty. The same ground suggested by attorney Kennelly, who advised not to pursue as he and Frazin were bribed.

302.    In letter dated 7/15/2021, Metcalf claimed he defended plaintiff based on aggravated felony and was granted deferral of removal under Convention of Torture of United Nation.

303.    Plaintiff emailed Metcalf on 6/19/2014 as to the filing of motion/petition to set aside conviction, he failed to answer.

304.    Metcalf had abandoned plaintiff criminal case and charged plaintiff $1,000.00. $6,000.00 was for immigration removal defense and the $1,000.00 was for the criminal case. He concealed the facts that he accepted bribes. He admitted that he received $7,000 as attorney's fees in his 7/15/2021 letter.

**Case No. 21-CIV-04197**
305.  There also claims for relief in relation to assets of late Lim Peet Kwang (hereinafter referred to as "LPK") during his life time and the estate of Lim Peet Kwang.
Sale of lot 168 in Kulim, Kedah, Malaysia, land as part of estate of Lim Peet Kwang
In July 24,2023, plaintiff emailed AmBank, demanding the return of deposit as depositor.

The sum of about RM $5 million and about RM 1.75 million in Malaysia
(i)bribes
306.    The wrongful freezing of the sum of about RM $5 million/1.75 million is void due to illegality. It is due the acts of conspiracy. The agreement to share the sum as agreed , i.e. it can be viewed as bribes, money laundering.

307.    In the 1995 December sale of AT&T property which was in substance a bribery to harm plaintiff at UWM, Lee Hsien Yang was the CEO of Singapore Telephone Company, Singtel, at the time. This is a possible solution and in all probability the solution to get around the issue of being detected for bribery and the problem of being convicted.

308.    Later, the date is much later, plaintiff found out the source is Singtel, Co., the New York Times news. It was expressly reported in the news that a company from Singapore (did not mention Singtel) bought the property of AT&T located in Chicago, the report with much more

details of the telephone company entering into real property market in Chicago. A disguise, for the bribery. Plaintiff is also entitled to restitution damages and the defendants are not allowed to benefit from their unlawful/tortious conduct. The sale by AT&T to Singtel in December 1995 is disguised and it was the conduit for bribery by LKY's clan to defendants in US, including individuals at UWM to harm plaintiff in US. The contract is unenforceable due to illegality, Singtel is not able to sell and transfer to a third party buyer a good title. AT&T is in possession and is not allowed to benefit from the possession and property and the purchase money they had received.  In 1995, Singtel was just incorporated from a government controlled agency. The initial public offering ("IPO") , the price of the share, generated lots of speculation. Some were eager to make a quick profits. The IPO generated a lot of cash and many people rushed to purchase the shares. The local companies in Singapore then have not ventured overseas to make such a huge investment.

309.    Singtel then has a short history, just incorporated with IPO and was infused with lots of cash due to lots of eager subscribers for the IPO. The IPO took place just a few years ago. There were then other overseas investments in Indonesia cell phone companies and in Australia, Tesla, by Singtel, but none in the real property sector. It is and has been a telephone service provider then as the main business.

310.    The building bought by Singtel, belonged to AT&T, Inc., on information and belief, was sold at purportedly "fair" market price, but the purported "fair" value is much far higher than its actual value, or even its stated book value, resulting in excessive payments, in the form of bribery, a criminal activity as money laundering. It is not a holding company with different types of business, compared to most US telephone companies, they also focused on business as telephone service providers.

311.    Lee Kuan Yew is no stranger to bribery. His law firm Lee & Lee, became the sole law firm that take care of all Singapore Bus Company cases. Plaintiff's classmate Joyce Lee worked there. She informed that she only handles Singapore Bus Company cases. And she works extremely hard with little pay and not long after that she resigned. There were many law firms to do this job, but only Lee & Lee is on the panel.

Confirming it was LKY's clan and Democrats
312.    It was last year, 2023  June while at Milpitas, California parking lot, near Burger King, across the road from Starbuck, at 175 West Calaveras Blvd, Milpitas that a middle-aged man appeared from a motorcycle, who approached plaintiff and stated that "is party", that plaintiff realized it is Democrats; plaintiff's recent motion, and appeal in SC112269 against Hacker  were denied in May around 17, in Los Angeles, and motions at San Mateo County, California, were denied, also Complaint No. 23-cv-2277 was never filed in late May, early June.

313.    The recent, Biden- appointed Taiwanese descendent "commerce " representative, a lady,  visited LHL in Singapore.  The Bloomberg Forum was held then recently in Singapore.

Thus, Plaintiff could confirm it was LHL, and not Mr. Goh Chok Tong, who has been persecuting plaintiff since 1995. Confirming the bribery event of 1995 December, AT&T sales.

314.    Plaintiff took the California Bar Exams as foreign attorney candidates in State of California in 1996 at San Jose Convention Center and on Feb 2021, remote (virtual due to COVID ) and in 2012 February in State of New York, for New York Bar Exams, based on foreign law school graduate, the jurisdictions of these states allow plaintiff to take bar exams.

Called to the State Bar of California
315.    In California in addition to the Bar Exams, plaintiff is required to take MPRE and pass a Moral Character Determination, in order to be called to the State Bar of California.

316.    National Conference of Bar Examiners "controls" Multi-states Bar Exams, (MBE)  and the MPRE (Multistate Professional Responsibilities Exams) exams in that it prepares the exams questions and grades them.

317.    It is a non-profit, like TOEFL English test, GMAT, GRE. MPRE is professional ethics exams, answered in multiple choices question. Law student in US usually take the one plus hour exams in the second year of law school.

318.    Plaintiff passed it in Nov/1995, raw score of 31, i.e. , 31 out of 50, while attending UW-Milwaukee, which met the requirement of California. (now is 86, and New York is 85).

319.    Plaintiff arrived in Hawaii on Feb, 1995, attended Hawaii Pacific University, then transferred to UW-Milwaukee.

320.    After plaintiff was dismissed in bad faith from UW-Milwaukee around June 1996, plaintiff moved to Madison from Milwaukee, applied for admission to University of New South Wales ("UNSW"), Sydney, took the end of July 1996 California Bar Exams, then plaintiff left for Sydney Australia, around august 1996, arrived slightly late as classes had already just started at UNSW. Although plaintiff is enrolled in LLM program, plaintiff ended up in a "Unit Trust" course together with LLB students, the course being a LLB course. It is out of ordinary as subsequent events revealed. It is again, the reversing of UW-Milwaukee. Registered downwards to LLB class.

321.    After one semester, due to persecution by LKY's clan, Kam Fan Sin stated throwing something from the sky, plaintiff transferred to University of Technology, Sydney ("UTS") and later around July 7, 1997 returned to US, arrived at San Francisco International Airport, then proceeded to Baltimore.

322.    In 2012 plaintiff took the New York Bar Exams, and Law Examiners failed plaintiff in bad faith. Plaintiff wrote to complaint with the parties. Plaintiff filed lawsuit,  against the New York

Board, Case No 12-cv-1390 in United States District Court, North District Court of New York, and 12-cv-429 in Wisconsin United States District Court, Eastern District of Wisconsin.

323.    MBE is also multiple-choice questions exams which counts for a major portions of the total scores of the Bar Exams in both California and New York.

324.    The two days bar exams, usually one day of written exams, including essays and a 'Performance Test', based on hypothetical evidence, solving a hypothetical, i.e. writing opinion, equivalent to report to the supervisors of attorney, or brief to the Court. It is a submission of applicable law to solve the hypothetical question.

325.    The Committee reported that plaintiff failed the 2021 July Bar and reported to State Bar of California.

The MBE score was suppressed so that plaintiff could not pass. In 2012, plaintiff requested that NCBE produced the Answer sheet of plaintiff to re-score but they side-stepped, refused to reply to the request.

Co-conspirator is NY Board of Law Examiners.

326.    MBE score can be transferred to any State that uses it for admission. It is the part score of all bar exams, except Wisconsin, where there is no bar exams.

327.    That is, MBE covers all topics common in all US law school, e.g.,  Criminal Law and Procedures, Contracts, Torts, Constitutional law, Property, Evidence, etc.
While local California law portions and MBE subjects are tested via the Essays questions.

328.    The MPRE in the 2021 exams was when NCBE scored the lowest score ever at 70, even though plaintiff answered almost all of them correct.

329.    NCBE suppressed plaintiff's score at California and New York Bar Exams, through the MBE exams. And conspired with LKY's clan , aided and abetted and through bribery.

Criminal conduct of defendants at Dallas :immediate, Irreparable harm and loss: temporary restraining order

330.    Plaintiff was subject to various, numerous  attempts to commit battery against plaintiff at Walmart Supercenter located at 6815, Retail Road, Dallas recently around Feb 23, 2024 till March 3, 2024 at Dallas; at underground car park opposite the court house; at Starbucks located 5905 Northeast highway, Dallas; at various gas stations in Dallas; at pizza restaurant nearby Walmart supercenter at 6815 Retail road,  at MJ's chicken rice restaurant, Dallas, and at gas stations on the way returning to Janesville recently, and police cars waited at gas station at

midnight, even though it was not in business at St Louis, MO,  and is liable to be falsely arrested again. Plaintiff has no adequate remedy at law.

331.    Plaintiff has also been wrongfully accused in Case No.: 12CR18264, 2012FO791 and Citation No.: 680983.

## Allegation of exemplary damages

332.    The aforementioned conduct of Defendants was oppressive, fraudulent, and malicious, in that said actions were intended to cause damage to Plaintiff; was despicable conduct carried on with a willful and conscious disregard of the rights of Plaintiff, that subjected Plaintiff  to cruel and unjust hardship in conscious disregard of his rights; and that said conduct was used by Defendants to deprive Plaintiff of his legal rights and to otherwise cause injury, so as to justify an award of exemplary and punitive damages in amount commensurate with the wealth of Defendants, and each of them, and designed to punish and deter similar conduct. Further, Defendant LKY'S clan has repeated his oppressive, fraudulent, and malicious actions and punitive damage is justified to deter him/them from committing the same actions.

## Tolling of statute of limitation

333.    The applicable statutes of limitations, and/or repose were tolled, due to, including but not limited to fraudulent representation, concealment, equitable estoppel by the conducts of the defendants and others.

TEMPORARY RESTRAINING ORDER
There is immediate, irreparable harm in this case. Ex parte proceeding is required.

Plaintiff prays the issuance of Temporary Restraining order, restraining Democrats, who have received bribes or influenced by the bribes received by the Obama administration, its agents, employees, associates in USA:

(A) (1) in particular, Alvin Bragg, District Attorney of Manhattan; Fani Willis, District Attorney of Fulton County; Jack Smith, Federal Special Counsel; and David Weiss, Federal Special Counsel;
(2) Dane County District Attorney, Ismael R. Ozanne , Cook County District Attorney Kimberly M. Foxx; and
(3) all other States, County, Municipal authorities run by Democrats,

from initiating, continuing, any and all court proceedings, civil or criminal, by utilizing or using public funds or resources, against political, social groups who holds opposite and different political social views from them, in particular views in relation to anti-LGTBQ, or basing their court proceedings on the alleged Jan 6, 2020 "riot", against non-parties, including Republican Presidential Candidate front runner, President Donald Trump, and his associates, Allen Weisselberg , Alexander Smirnov, and private individuals, including plaintiff in this action.

COMPLAINT
- 47 -

(B) against State of New York, Attorney General of New York, Letitia James, including her duly authorized associates, agents, employees from opposing any application to the Court in the New York State Court, or any appeal, in INDEX NO.: 452564/2022 by non-parties, including Republican Presidential Candidate front runner, President Donald Trump, Eric Trump , Donald Trump, Jr. , the Donald J. Trump Revocable Trust, the Trump Organization, Inc., Trump Organization LLC, DJT Holdings LLC, DJT Holdings Managing Member, Trump Endeavor 12 LLC, 401 North Wabash Venture LLC, Trump Old Post Office LLC, 40 Wall Street LLC , Allen Weisselberg and Jeffrey McConney , and from executing the judgment entered in INDEX NO. 452564/2022 on 2/16/2024, against all the above-mentioned defendants.

(C) And against Lucien Wong, Lee Hsien Loong, of Singapore, their employees, agents, associates and all and any persons acting under their order or authority, from initiating, continuing, false prosecution, opposing any application to the Court, or any appeal, by Goh Jin Hian, who is charged with 39 charges together with Kelvyn Oo Cheong Kwan, William Teo Thiam Chuan, Huang Yiwen in Singapore, filed on September 20, 2023, in Case No.: And the hearing involved Goh Jin Hian. Case No : SC 905855-2023, Charge No : DAC-914968-2023 and related case  and from executing any sentence or judgment against the same. The charges or false accusations were brought or will be brought for "political and vindictive reasons".

-(D) and a freezing order against Government of Singapore, GIC, GIC Re, Temasek Holdings, Liu Teck Yew, AT&T , Singtel, restraining the defendants from disposing, dealing, leasing, selling, entering into any agreement to sell, lease, transferring the title, legal and equitable interest, or otherwise dispose of the legal and equitable interests, or otherwise deal with the real property or with their assets located in USA, the assets as pleaded in the Original Petition, including but not limited to the following :
-AT&T Corporate Building, sold in December 1995 to Singtel
-IndCor Properties Inc
-Store Capital Corporation
-Summit Industrial Income REIT
-Dream Industrial REIT
-Dream Summit Industrial LP
(E)      And restraining E Jean Carroll, from opposing any application to the Court, or any appeal, by President Donald Trump executing any judgment entered on 5/9/2023 for $5 millions, for Case No. : 20-cv-7311-LAK and in action/case filed on 11/24/2022, Case No. 22-cv-10016-LAK,  for $83.3 millions and obtained against in any lawsuits, or for any judgment sum entered by the court.
(F)      And restraining Ruby Freeman, Wandrea Moss from opposing any application to the Court, or any appeal by Rundolph W. Giuliani, from executing any judgment in Case No. 21-cv-03354, obtained against Rundolph W. Giuliani, including the total sum of $148 million or for any judgment sum entered by the court.

(G)     And restraining Deloitte & Touche, of Singapore, from opposing any application to the Court, or any appeal, filed by Goh Jin Hian, in Suit No. 953 of 2020, from executing any judgment, including for US$146 millions, obtained against him in Suit No. 953 of 2020 or any judgment sum entered by the High Court of Singapore.

(H)     And Restraining the defendants, LKY's clan, Democrats, its agents, associates, employees from committing murder, criminal battery, intentional car hit, criminal trespass, criminal attempts, criminal acts/unlawful, illegal, tortious acts and conducts in the State of Texas and elsewhere in US.

(I)     Restraining defendants who involved in bribery in causing false prosecution fabrication of evidence, fraud on the Court, or bad faith conviction in all cases pleaded in the Plaintiff's Original Petition, and any pleadings and as stated in the supporting declaration from holding public office, or position, including all the defendants in Singapore and US.

(J)     Restraining all defendants AT&T directors involved in bribery from holding any public office and as directors and officers of any corporations, legal entities.

(K)     Restraining all other States, County, Municipal authorities run by Democrats, Dane County, Police officers in the above-mentioned Democrats-run authorities, from falsely arresting Plaintiff and committing battery.

(L)     Restraining defendants Democrats, LKY's clan, LHL, its agents, employees, associates, from committing unlawful , criminal acts against plaintiff, including by hiring hitman to commit criminal acts.

(M)     Restraining AHFC, Rock County Honda, its agents, associates, employees from acting on the finance car loan, i.e. to repossess, foreclose, or otherwise seize, or take possession of the Honda Car, Cr-V, 2016, car Wisconsin license plate 892 XDK.

And set an earliest hearing date possible for preliminary injunction hearing, for among others, to decide to continue, modify or dissolve the temporary restraining order, to refund any bond money posted by: President Trump, Bond of $175 millions in New York Attorney General Letitia James civil case mentioned above and $91.6 millions bond posted in E Jean Carroll case;  and bond posted by the accused in Singapore: Goh Jin Hian, Kelvyn Oo Cheong Kwan, William Teo Thiam Chuan, Huang Yiwen; and an order to return the passports to the accused : Goh Jin Hian, Kelvyn Oo Cheong Kwan, William Teo Thiam Chuan, Huang Yiwen.

<u>First and Second Cause of Action</u>
Violations of Statutory Duty
(Against Committee)

334.    Plaintiff refers to and incorporates by reference all prior paragraphs.

First cause of action:( accepting bribes and concealment)

COMPLAINT
- 49 -

335.    Defendant's duty is imposed by statute, and by colluding with LKY's clan , accepted bribes, they violated the statutory duties.

336.    Defendant breached the statutory duty imposed by accepting bribes.

Second cause of action: (Suppressing fraudulently plaintiff's score):

337.    Defendant's duty is imposed by statute.

338.    In violation of statutory duty , i.e. suppressing plaintiff's exams scores and failing plaintiff in the bar exams in 1996 and 2021. The defendant acted in bad faith and based intentionally on the scored provided by NCBE in relation to MBE scores, knowing that the score by NCBE for MBE were suppressed and were low and based also on the essays question, performance tests, each was suppressed with low scores. In the 2021 Bar Exams, Plaintiff totaled points is low 1134.7525.

As for MPRE, a score of more than 86 in 1996 and a low score of 70 in 2021 for MPRE, a 60 question multiple-choice exams could have put reasonable admission officer on notice/suspicion and inquire further. Both California and New York are Democrat State.

339.    Defendant breached/violated the statutory duty imposed. The Moral Character Assessment is now rendered impossible as the defendant accepted bribes. Plaintiff is facing a Committee who would act to fail plaintiff in the assessment.

A successful candidate has to attend a ceremony, to be admitted, but, it is just a ceremony, and with Committee having accepted bribes, the ceremony is unnecessary.

340.    As a direct and proximate result of the Defendant actions and conducts, herein mentioned Plaintiff has suffered loss and damage, and mental sufferings ,including humiliations, anguish, frustration, anger, grief, despairs.

<u>Particulars of loss and damages</u> (economic loss)

(hereinafter referred to as **"Plaintiff's loss"**)

-Plaintiff should have passed the 1996 California Bar exams if not for the bribery. And started working from then on.
-Loss and damages include loss of income from September 1996 to April, 2024 and is ongoing. loss of income from September 1996 to April, 2024 and is ongoing.

-Plaintiff should have been called to the Bar in 1996 and thereafter worked , for example at federal court, immigration court, as in-house lawyer, as tax court lawyer, and not necessarily in

California Court doing litigation. The average monthly salary : based on the lowest on the continuum : $75,570.00 /year.

30 years x $75,570.00 = $2,267,170.00 of loss of income.
And could have passed the 2021 Feb exams:
May 2021 to April 2024 loss of income:
2 years 11 months loss of income= about $190,000.48.

Special damages:
1996 exams
-exams fees around $1000.00
-travel from Wisconsin to San Jose, $300.00
-stay at Best Western Hotel, 2 nights, $260.00

2021 exams:
-exams fees around $1000.00

Third Cause of action
Fraud
(Against all defendants except Carroll, Freeman, Moss )

341.     Plaintiff refers to and incorporates by reference all prior paragraphs.

342.     All defendants in this cause of action, except Carroll, Freeman, and Moss, committed Fraud by concealment, concealing the bribes from LKY's clan, as LKY'S clan provided bribes, and others accepted bribes, the defendant Committee and NCBE concealed the facts that they accepted bribes and went on to fail plaintiff in the Bar Exams.

AHFC concealed about bribes, and fraudulently duplicated the car keys and distributed to others to access plaintiff's car.

As a result of fraud by AHFC, and AHFC as a party involved in illegality, AHFC can not enforce the contract and the contract is void.

343.     The defendants fraudulently represented that plaintiff failed the exams.

Defendants also committed fraud by concealing the fact that they took bribes, i.e. and acted in suppressing plaintiff's exams scores and failing plaintiff in the bar exams in 1996 and 2021. The defendant acted in bad faith and based intentionally on the scored provided by NCBE in relation to MBE scores, knowing that the score by NCBE for MBE were suppressed and were low and based also on the essays question, performance tests, each was suppressed with low scores. In the 2021 Bar Exams, Plaintiff totaled points is low 1134.7525.

COMPLAINT
- 51 -

As for MPRE, a score of more than 86 in 1996 and a low score of 70 in 2021 for MPRE, a 60 question multiple-choice exams could have put reasonable admission officer on notice/suspicion and inquire further.

Defendant fraudulently breached the duty imposed. The Moral Character Assessment is now rendered impossible as the defendant accepted bribes. Plaintiff is facing a Committee who would act to fail plaintiff in the assessment.

A successful candidates has to attend a ceremony, to be admitted, but, it is just a ceremony, and with Committee having accepted bribes, the ceremony is unnecessary.

344.    Plaintiff reasonably and justifiably relied on and acted on the false representation.

345.    As a direct and proximate result of the Defendant actions and conducts, herein mentioned Plaintiff has suffered loss and damage, and mental sufferings including humiliations, anguish, frustration, anger, grief, despairs. And incurred both expectation loss and reliance loss.

Particulars of loss and damages

Expectation loss:
-Plaintiff should have passed the 1996 California Bar exams if not for the bribery. And started working from then on.
-Loss and damages include loss of income from September 1996 to April, 2024 and is ongoing. loss of income from September 1996 to April, 2024 and is ongoing.

-Plaintiff should have been called to the Bar in 1996 and thereafter worked , for example at federal court, immigration court, as in-house lawyer, as tax court lawyer, and not necessarily in California Court doing litigation. The average monthly salary : based on the lowest on the continuum : $75,570.00 /year.

30 years x $75,570.00 = $2,267,170.00 of loss of income.
And could have passed the 2021 feb
May 2021 to April 2024
2 years 11 months loss of income= about $190,000.48.

1996 exams
-exams fees around $1000.00
-travel from Wisconsin to San Jose, $300.00
-stay at Best Western Hotel, 2 nights, $260.00

2021 exams:
-exams fees around $1000.00

COMPLAINT

Reliance loss:
-preparation to take 1996 and retake 2021 exams. Plaintiff incurred expenses, due to failure to pass, from 1996 till to-date.

Plaintiff switched to take New York bar in 2012. Resources relied upon and spent and lost from 1996 and is ongoing.

In fraud cases, plaintiff is granted both expectation and reliance loss, plus mental suffering.

Fourth and Fifth Cause of action<br>Breach of contracts<br>(Against Committee, NCBE)

346.    Plaintiff refers to and incorporates by reference all prior paragraphs

Fourth cause of action: breached by accepting bribes and concealment

347.    There exists a contract, written, with defendant Committee and NCBE.

348.    In breach of contract, the defendants accepted bribes, NCBE suppressed plaintiff's score in MPRE and MBE and Committee accepted the low suppressed MBE score by NCBE and went on to fail plaintiff in bad faith in the bar exams.

Fifth cause of action: suppressing and failing in bad faith

349.    As a direct and proximate result of the Defendant actions and conducts, herein mentioned Plaintiff has suffered loss and damage. ( i.e. above-mentioned  **"Plaintiff's loss"**)

Sixth Cause of Action<br>Tortious Interference with Contracts<br>(LKY's Clan, AT&T, AT&T Defendants, GIC, GIC Re, Singtel, Malaysia Extra Defendants)

350.    Plaintiff refers to and incorporates by reference all prior paragraphs.

351.    Plaintiff has a contract, which is subject to interference, a contract with Committee and NCBE.

352.    The defendants interfered with the contracts, suppressed plaintiff's exams scores.

353.    Plaintiff did email the staff stating that Plaintiff's score was suppressed, but met with unjustified, provoking reply.

COMPLAINT<br>- 53 -

354.    As a proximate results of the defendants' acts, plaintiff has suffered loss and damage, (i.e. the above-mentioned **"Plaintiff's loss"**) and mental suffering, including humiliations, anguish, frustration, anger, grief, despairs.

Seventh Cause Of Action
Aiding And Abetting
(Against LKY's Clan,  AT&T, AT&T Defendants, GIC, GIC Re, Singtel, Malaysia Extra Defendants)

355.    Plaintiff refers to and incorporates by reference all prior paragraphs.

Aiding and abetting  fraud , violation of statutory duties torts : LKY's clan, Malaysia Extra Defendants
356.    That the Committee, the party whom the defendants mentioned herein aids, performed a wrongful act, i.e. that causes an injury; abetted by the defendants to this cause of actions.

357.    The defendants was generally aware of his or her role as part of an overall illegal or tortious activity at the time of providing the assistance; and (3) the defendant knowingly and substantially assisted the principal violation by Committee.

358.    As described above, at all times relevant to this charge, LKY'S CLAN,  AT&T, AT&T Defendants, GIC, GIC Re, Singtel, Malaysia Extra Defendants aided and abetted the commission of tortious, unlawful, illegal acts herein.

359.    The defendant, LKY'S CLAN,  AT&T, AT&T Defendants, GIC, GIC Re, Singtel, Malaysia Extra Defendants  were regularly aware of his role as part of the overall or tortious activity at the time that he provides the assistance.

360.    The defendant LKY'S CLAN,  AT&T, AT&T Defendants, GIC, GIC Re, Singtel, Malaysia Extra Defendants knowingly and substantially assist the principal violation.

361.    Plaintiff suffered injury, both economic and otherwise, including emotional distress, as a result of the aiding and abetting fraud by the defendant.
(i.e. above-mentioned **"Plaintiff's loss"**)

Eighth Cause of action
Civil Conspiracy
(Against All Defendants, except Carroll, Freeman and Moss**)**

362.    Plaintiff refers to and incorporates by reference all prior paragraphs.

363.    As described above, at all times relevant to this cause of action. the defendants acted in agreement and in conspiracy to defraud plaintiff, to injure unlawfully, with malice, plaintiff's

reputation and to destroy plaintiff financially and cause severe mental distress in Illinois, California.

364.    There exists, among the defendants, a combination of two or more persons, including LKY's clan, conspired in Illinois, conspired in California, all co-conspirators defendants are liable.

365.    The defendants owed a duty or acted in conspiracy for financial gains.

366.    The defendants possess the purpose, plan, agreement, of accomplishing either an unlawful purpose or a lawful purpose by unlawful means to defraud, injure unlawfully, with malice, plaintiff's reputation and to destroy plaintiff financially and emotionally in Illinois and in California, Wisconsin and elsewhere.

367.    The defendants have acted in concert. There were overt tortious or unlawful act to further the plan. The conspiracy involving LKY's clan acted to fail plaintiff in bar exams.

368.    As a proximate result of the conspiracy to defraud plaintiff suffers loss, damage and mental sufferings including humiliations, anguish, frustration, anger, grief, despairs.

369.    Each participant in the wrongful act is responsible as a joint tortfeasor for all ensuing damages, regardless of whether that conspirator was a direct actor and regardless of the degree of his or her activity. Each conspirator liable as a joint tortfeasor "whether or not he actually committed the wrongful act." ( Barney v. Aetna Casualty & Surety Co. (1986) 185 Cal.App.3d 966, 983 [230 Cal.Rptr. 215]; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 44, p. 107.)

Nineth Cause Of Action
Unjust Enrichment
(Against All Defendants except Carroll, Freeman, And Moss)

370.    Plaintiff refers to and incorporates by reference all prior paragraphs.

371.    The Defendant has been unjustly enriched due to : (1) a benefit conferred upon the defendant by LKY's clan, i.e. bribes , channeled through the purchase of property mentioned herein. The contract is illegal, and unenforceable.

372.    Defendant has knowledge or appreciation of the benefit by the defendant; and

373.    Acceptance and retention by the defendant of such benefit, the real property, the bribes,   under such circumstances that it would be unfair for him or her to retain it without paying the value thereof.

COMPLAINT
- 55 -

374.     It is not necessary to prove that the recipient of the benefit was at fault or guilty of wrongdoing in any way, but it must be established that as between the parties it would be unfair for the recipient to retain the benefit without paying the reasonable value of the benefit. A benefit to the defendant is the real property and the sale price money it has received as the buyers, LKY's clan, is not able to enforce the contract.

375.     Defendants accepted bribes, committed unlawful acts, tortious acts on plaintiff and restitution damages , disgorgement, is proper as they have been unjustly enriched.

Tenth Cause Of Action
Accounting
(All Defendants except Carroll, Freeman, and Moss)

376.     Plaintiff refers to and incorporates by reference all prior paragraphs.

377.     Accounting is proper in view of the unlawful  and unjust enrichment and uncertain sum of bribes accepted by the defendants, including the fiduciaries and those participated in the breaches of fiduciary duties.

Eleventh Cause of Action
Intentional Infliction of Emotional Distress
(Against All Defendants except Carroll, Freeman, and Moss)

378.     Plaintiff refers to and incorporates by reference all prior paragraphs.

379.     The defendant acted intentionally or recklessly; 2) the defendant's conduct was extreme and outrageous; 3) the conduct caused the plaintiff emotional distress; and 4) the emotional distress was severe. The "Extreme and outrageous" conduct of the defendants are "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community..

380.     As described above, at all times relevant to this charge, the defendants' conduct was extreme and outrageous.

381.      The conduct that is so extreme and outrageous that it goes beyond all possible bounds of decency.

382.     Defendants parties have actual or apparent power or authority over the Plaintiff.

383.     The defendants did not reasonably believe that their objectives were legitimate and the defendants were aware that the Plaintiff was particularly susceptible to emotional distress.

COMPLAINT
- 56 -

384.    The defendants intended to cause, or recklessly or consciously disregarded the probability of causing, the plaintiff to suffer emotional distress. The defendants were certain, or were substantially certain, that their conduct will cause emotional distress.

385.    Plaintiff suffered severe or extreme emotional distress, including fright, horror, grief, worry, shame, and humiliation.

386.    No reasonable person could be expected to endure it.

387.    The defendant's conduct actually and proximately caused severe emotional distress.

388.    Plaintiff suffered injury, both economic and otherwise, including emotional distress, as a result of the intentional infliction of emotional distress by the defendants.

PRAYER FOR RELIEF
WHEREFORE PLAINTIFF prays this Court for the grant of the following relief:

1.    A declaration that the all the contracts entered into by LKY's clan in US handled by attorney Olson and the 1995 December AT&T's sale is illegal and unenforceable. All bribery are illegal.

2.    A declaration that the Bar Exams result in 1996 and 2021, all MPRE results are null and void, except the November 1995 raw score of 31.

3.    A declaration that plaintiff have passed all examinations held by Committee of State Bar of California.

4.    A declaration that plaintiff have passed all MBE and MPRE exams for admission to State Bar of California.

5.    A declaration that plaintiff is innocent in Case No. 12Cr18264.

6.    A declaration that all agreement with American Honda Finance Corporation, and/or its agents, associates, Rock County Honda, is void ab initio.

7.    An Order that the judgment of conviction on 7/16/2013 be vacated.

8.    A Mandatory injunction to Committee of Bar Examiners of State Bar of California and NCBE ordering the Committee of Bar Examiners, and NCBE to correct/rectify all records of plaintiff, and Committee of Bar Examiners to record that plaintiff as having passed all exams and met the Moral Character Determination test, have satisfied all the requirement to be called

to the State Bar of California, and report to State Bar of California that Plaintiff has satisfied all requirements to be called to the State Bar of California, forthwith.

9.    A Mandatory injunction to State Bar of California ordering the State Bar of California to accept the report by Committee of Bar Examiners as having passed all exams, enter and register plaintiff's name as an attorney of State Bar of California with attorney number #514718, and that no court ceremony is required, forthwith.

10. Injunctive relief:
-permanently enjoin Democrats, who have received bribes or influenced by the bribes received by the Obama administration, its agents, employees, associates in USA:

(A) (1) in particular, Alvin Bragg, District Attorney of Manhattan; Fani Willis, District Attorney of Fulton County; Jack Smith, Federal Special Counsel; and David Weiss, Federal Special Counsel;
(2) Dane County District Attorney, Ismael R. Ozanne , Cook County District Attorney Kimberly M. Foxx; and
(3) all other States, County, Municipal authorities run by Democrats,

> from initiating, continuing, any and all court proceedings, civil or criminal, by utilizing or using public funds or resources, against political, social groups who holds opposite and different political social views from them, in particular views in relation to anti-LGTBQ, or basing their court proceedings on the alleged Jan 6, 2020 "riot", against non-parties, including Republican Presidential Candidate front runner, President Donald Trump, and his associates, Allen Weisselberg , Alexander Smirnov, and private individuals, including plaintiff in this action.

(B) against State of New York, Attorney General of New York, Letitia James, including her duly authorized associates, agents, employees from opposing any application to the Court in the New York State Court, or any appeal, in INDEX NO.: 452564/2022 by non-parties, including Republican Presidential Candidate front runner, President Donald Trump, Eric Trump , Donald Trump, Jr. , the Donald J. Trump Revocable Trust, the Trump Organization, Inc., Trump Organization LLC, DJT Holdings LLC, DJT Holdings Managing Member, Trump Endeavor 12 LLC, 401 North Wabash Venture LLC, Trump Old Post Office LLC, 40 Wall Street LLC , Allen Weisselberg and Jeffrey McConney , and from executing the judgment entered in INDEX NO. 452564/2022 on 2/16/2024, against all the above-mentioned defendants.

(C) And against Lucien Wong, Lee Hsien Loong, of Singapore, their employees, agents, associates and all and any persons acting under their order or authority, from initiating, continuing, false prosecution, opposing any application to the Court, or any appeal, by Goh Jin Hian, who is charged with 39 charges together with Kelvyn Oo Cheong Kwan, William Teo Thiam Chuan, Huang Yiwen in Singapore, filed on September 20, 2023, in Case No.: And the

COMPLAINT
- 58 -

hearing involved Goh Jin Hian. Case No : SC 905855-2023, Charge No : DAC-914968-2023 and related cases: and from executing any sentence or judgment against the same.

(D) and a freezing order against Government of Singapore, GIC, GIC Re, Temasek Holdings, Liu Teck Yew, AT&T, Singtel, restraining the defendants from disposing, dealing, leasing, selling, entering into any agreement to sell, lease, transferring the title, legal and equitable interest, or otherwise dispose of the legal and equitable interests, or otherwise deal with the real property or with their assets located in USA, the assets as pleaded in the Original Petition, including but not limited to the following :

-AT&T Corporate Building, sold in December 1995 to Singtel
-IndCor Properties Inc
-Store Capital Corporation
-Summit Industrial Income REIT
-Dream Industrial REIT
-Dream Summit Industrial LP

(E)     And enjoin E Jean Carroll, from opposing any application to the Court, or any appeal, by President Donald Trump executing any judgment entered on 5/9/2023 for $5 millions, for Case No. : 20-cv-7311-LAK and in action/case filed on 11/24/2022, Case No. 22-cv-10016-LAK,  for $83.3 millions and obtained against in any lawsuits, or for any judgment sum entered by the court.

(F)     And enjoin Ruby Freeman, Wandrea Moss from opposing any application to the Court, or any appeal by Rundolph W. Giuliani, from executing any judgment in Case No. 21-cv-03354, obtained against Rundolph W. Giuliani, including the total sum of $148 million or for any judgment sum entered by the court.

(G)     And enjoin Deloitte & Touche, of Singapore, from opposing any application to the Court, or any appeal, filed by Goh Jin Hian, in Suit No. 953 of 2020, from executing any judgment, including for US$146 millions, obtained against him in Suit No. 953 of 2020 or any judgment sum entered by the High Court of Singapore.

(H)      And enjoin the defendants, LKY's clan, Democrats, its agents, associates, employees from committing murder, criminal battery, intentional car hit, criminal trespass, criminal attempts, criminal acts/unlawful, illegal, tortious acts and conducts in the State of Texas and elsewhere in US.

(I)     Enjoin defendants who involved in bribery in causing false prosecution fabrication of evidence, fraud on the Court, or bad faith conviction in all cases pleaded in the Plaintiff's Original Petition, and any pleadings and as stated in the supporting declaration from holding public office, or position, including all the defendants in Singapore and US.

(J)     Enjoin all defendants AT&T directors involved in bribery from holding any public office and as directors and officers of any corporations, legal entities.

(K)     Enjoin all other States, County, Municipal authorities run by Democrats, Dane County, Police officers in the above-mentioned Democrats-run authorities, from falsely arresting Plaintiff.

COMPLAINT
- 59 -

(L)      Enjoin defendants , Democrats, LKY's clan, LHL, its agents, employees, associates, from committing unlawful , criminal acts against plaintiff, including by hiring hitman to commit criminal acts.

(M)      Enjoin AHFC, Rock County Honda, its agents, associates, employees from acting on the finance car loan, i.e. to repossess, foreclose, or otherwise seize, or take possession of the Honda Car, CR-V, 2016, Wisconsin license plate 892 XDK.

11.      And mandatory injunctive relief: for an order to return the passports to the accused and refund any bond money posted by including Republican Presidential Candidate front runner, President Donald Trump, Eric Trump , Donald Trump, Jr. , the Donald J. Trump Revocable Trust, the Trump Organization, Inc., Trump Organization LLC, DJT Holdings LLC, DJT Holdings Managing Member, Trump Endeavor 12 LLC, 401 North Wabash Venture LLC, Trump Old Post Office LLC, 40 Wall Street LLC , Allen Weisselberg and Jeffrey McConney and by the accused: Goh Jin Hian, Kelvyn Oo Cheong Kwan, William Teo Thiam Chuan, Huang Yiwen.

12.      That an account be taken of the bribes received by the defendants.

13.      Disgorgement.

14.      Restitution damages

15.      Compensatory damages

16.      Punitive damages

17.      For costs and disbursements of this action.

18.      Such further and other relief as the Court deems fit and proper.

Date : 5/22/2024

/s/ Khor Chin Lim

----------------------------------------------------

Khor Chin Lim, pro se Plaintiff

VERIFICATION

Under oath, I state that the above petition is true, except as those matters stated upon information and belief, and as to those matters, I believe them to be true.

Date: 5/22/2024

/s/ Khor Chin Lim

----------------------------------------------------

Khor Chin Lim, pro se Plaintiff

COMPLAINT

Exhibit A

| | |
|---|---|
| **Subject** | Fw: Statement of Account |
| **From** | Allison Lim <a33lim@yahoo.com> |
| **To:** | Meow Chu Lim <mclim64@aol.com>, Kc Lim <kclim478@yahoo.com>, Foon Lim <mflim513@gmail.com> |
| **Date** | Nov 26, 2020 at 4:18 PM |

Just received Stmt of Acct (1st pdf). I am attaching the **Original Bill** back in May and **Invoice** in August.

Original bill in May listed a grand total of RM40,660.66.

**Handwritten** amount of RM29800. >>> Discount???? I never asked for explanation

I paid RM2000 in May, RM2000 in July, RM 5250.88 in August.

Original bill of 29800 became 27800 Balance Legal Charges in the last Stmt of Acct (1st pdf). (My first 2000 payment)

Invoice in August was 7250.88 - 2000 = 5250.88

----- Forwarded Message -----
**From:** Tan Lok Heah Heah <tanlokheah@yahoo.com>
**To:** Allison Lim <a33lim@yahoo.com>
**Sent:** Thursday, November 26, 2020, 1:05:29 AM PST
**Subject:** Statement of Account

Dear Alison

Please find enclosed a Statement of Account for your attention.

We are now awaiting for the presentation receipt from the Purchaser's Solicitors and will update you soon on the issuance and banking into your given account

Regards
Ms Carolyn Ooi
TAN LOK HEAH & ASSOCIATES

Statement of Account - Heng Ah Lai.pdf

Letter to Lim Meow Siam & Heng Ah L…

Bill No.LT.38-20 to Mdm Heng Ah Lai.pdf

# TAN LOK HEAH & ASSOCIATES

ADVOCATES & SOLICITORS, PEGUAMBELA & PEGUAMCARA
REGISTERED TRADE MARK AND INDUSTRIAL DESIGN AGENT

陳　祿　霞　律　師　樓

商 標 及 工 業 設 計 註 冊
國 際 公 證 官，核 準 調 解 員

陳 祿 霞 律 師
**TAN LOK HEAH** P.K.T.
LL.B.(Hons)(Lond), Barrister-at-Law,(Lincoln's Inn)
MEDIATOR, NOTARY PUBLIC
**NOREHAN BINTI HAJI YAHYA** LL.B.(Hons)IIUM

CAROLYN OOI FI LU LL.B.(Cantuar N.Z)
NORMILA BINTI MOHAMAD LL.B.(Hons) IIUM
UMMU AIMAN BINTI ISMAIL LL.B.(Hons) IIUM
NURUL SHAKINAH BINTI MOHD SAIPUDIN LL.B.(Hons) IIUM
SHERLIZA BINTI HILMIY LL.B.(Hons) MMU

Our Ref    :  SS(6/20)CO/H
Date       :  29/5/2020

**MESDAMES LIM MEOW SIAM &
HENG AH LAI @ H'NG SIEW CHOO**
No. 655, Island Place,
Redwood City,
CA 94065, USA.
Cell No.: +1 650 293.7361

Dear Madam,

| | | |
|---|---|---|
| Property | : | All that piece of land and hereditaments known as H.S.(M) 5220, PT No. 168, Bandar Kulim, Daerah Kulim, Negeri Kedah with an area measuring 3.127 hectares, which equivalent is 336,587.48 square feet |
| Vendor(s) | : | Heng Ah Lai @ H'ng Siew Choo & Lim Meow Siam both as Executors of the Estate of Lim Peet Kwang, deceased |
| Purchaser | : | Goh Cheng Guan Holdings Sdn Bhd (Company No. 116370-W) |

We refer to the above matter and enclosed herewith the following documents for your execution and early return to us: -

A.   Sale and Purchase Agreement
    (4 Sets)

- to execute in full at the place marked "xx" and attested by Commissioner/Consulate Officer of the Malaysian Embassy/Notary Public at the place marked "Y"

- to initial at the place marked "x" at the bottom of every pages

B.   Form 14A (Memorandum of Transfer)
    (2 Copies)

- to execute in full at the place marked "xx" and attested by Commissioner/Consulate Officer of the Malaysian Embassy/Notary Public at the place marked "Y"
- To emplace your Right Thumb Print inside the penciled box next to your respective signatures

C.   Statutory Declaration for Non-Bankrupt
    (2 Copies)

- to execute in full at the place marked "xx" and attested by Commissioner/Consulate Officer of the Malaysian Embassy/Notary Public at the place marked "Y"

.../-

22A, Jalan Maju Jaya,
Pusat Perniagaan Maju Jaya,
Kampung Bharu, 14000 Bukit Mertajam,
Pulau Pinang.

Tel: 04-5373428, 5373488
E-mail: tanlokheah@yahoo.com
Fax Conveyancing : 04-5372423
Fax Litigation : 04-5373423
Hotline: 1700818423

**TAN LOK HEAH & ASSOCIATES**
ADVOCATES & SOLICITORS
PEGUAMBELA DAN PEGUAMCARA

陳　祿　霞　律　師　樓

**Continuation Sheet**

-2-

D. Letter Undertaking to Refund to the
   Purchaser's Financier
   (2 Copies)

- to execute in full at the place marked "xx" and
  attested by Commissioner/Consulate Officer of
  the Malaysian Embassy/Notary Public
  at the place marked "Y"

E. Letter Undertaking to Refund to the
   Purchaser
   (2 Copies)

- to execute in full at the place marked "xx" and
  attested by Commissioner/Consulate Officer of
  the Malaysian Embassy/Notary Public
  at the place marked "Y"

F. Letter of Acknowledgement of 10%
   to Purchaser
   (2 Copies)

- to execute in full at the place marked "xx" and
  attested by Commissioner /Consulate Officer
  of the Malaysian Embassy/Notary Public
  at the place marked "Y"

G. Letter of Acknowledgement of difference
   Sum between balance purchase price
   and loan amount
   (2 Copies)

- to execute in full at the place marked "xx" and
  attested by Commissioner/Consulate Officer of
  the Malaysian Embassy/Notary Public
  at the place marked "Y"

H. Authorization Letter of deduct legal
   charges from balance deposit
   (2 Copies)

- to execute in full at the place marked "xx"

I. Letter of Authorization addressed to
   the Purchaser's financier
   (2 Copies)

- to execute in full at the place marked "xx" and
  attested by Commissioner/Consulate Officer of
  the Malaysian Embassy/Notary Public
  at the place marked "Y"

J. Borang CKHT 1A & CKHT 3
   (2 Sets)

- to execute in full at the place marked "xx"

We enclosed herewith the following for your attention: -

(i) A copy of Note of Charges dated 20/5/2020

../-

**TAN LOK HEAH & ASSOCIATES**   陳 祿 霞 律 師 樓   **Continuation Sheet**

ADVOCATES & SOLICITORS
PEGUAMBELA DAN PEGUAMCARA

-3-

Kindly ensure that you use <u>**Black Ink Fountain / Signing Pen**</u> **(Not Ballpoint Pen)** and a **Black Ink Thumb Pad** to execute the above documents and return all the above duly executed documents to us as soon as possible to enable us to proceed further.

Meanwhile, kindly acknowledge receipt of the enclosures and this letter by signing on and returning to us the duplicate copy hereof.

Yours faithfully,

………………………………..
*CAROLYN OOI FI LU*
*Advocate & Solicitor*
*Encl.*

# TAN LOK HEAH & ASSOCIATES

ADVOCATES & SOLICITORS
PEGUAMBELA AND PEGUAMCARA
No. 22A, Jalan Maju Jaya,
Pusat Perniagaan Maju Jaya, Kampung Bharu,
14000 Bukit Mertajam.
Tel. No.: 04-5373428, 04-5373488
Fax No.: 04-5372423 (Conveyancing), 04-5373423 (Litigation)

Our Ref : SS(6/20)CO/H

**HENG AH LAI @ H'NG SIEW CHOO &**
**LIM MEOW SIAM**
**both as executors of Estate of Lim Peet Kwang, deceased**
No. 30, Jalan Meranti,
Bagan Ajam,
13000 Butterworth, Pulau Pinang.

Bill No :
SST No.: P13-1808-32000107
Date: 20/5/2020

Page : 1 of 1

Property:  All that piece of land and hereditaments known as H.S.(M) 5220, PT No. 168, Bandar Kulim, Daerah Kulim, Negeri Kedah
Purchaser: Goh Cheng Guan Holdings Sdn Bhd (116370-W)
Selling Price: RM 5,217,105-94

| Description | Fees / Charges (RM) | 6% SST amount (RM) | Total Including SST (RM) |
|---|---|---|---|
| To our PROFESSIONAL CHARGES in taking all instruction for this matter, all attendances correspondences and work incidental thereto:- | | | |
| Transfer | 36,085.53 | 2,165.13 | 38,250.66 |
| Real Property Gains Tax | 1,100.00 | 66.00 | 1,166.00 |
| Total Fees inclusive SST | 37,185.53 | 2,231.13 | 39,416.66 |
| Office Disbursement | | | |
| Travelling | 100.00 | 6.00 | 106.00 |
| Bankruptcy Search | 50.00 | 3.00 | 53.00 |
| Photostating Charges | 50.00 | 3.00 | 53.00 |
| Incidential & Postage | 50.00 | 3.00 | 53.00 |
| Miscellaneous | 50.00 | 3.00 | 53.00 |
| DHL Courier Service Charges | 600.00 | 36.00 | 636.00 |
| Total Charges inclusive SST | 900.00 | 54.00 | 954.00 |
| Disbursement | | | |
| Land Search | 90.00 | - | 90.00 |
| Affirming & Stamping Statutory Declaration | 100.00 | - | 100.00 |
| Registration Fee for Court Order for Sale | 100.00 | - | 100.00 |
| Total Disbursement exclusive SST | 290.00 | - | 290.00 |
| TOTAL DUE TO US | 38,375.53 | 2,285.13 | 40,660.66 |

29,800-00

*Interest at the rate of 8% per annum will be chargeable after One (1) month from the*
*date of hereof pursuant to Rule 5 of the Solicitors Remuneration Order 2005.*

**Conveyancing Department**          **Accounts Department**          **M/S Tan Lok Heah & Associates**
**H'ng Chew Hoon**                        **Angeline    Khor Ai Ping**          **Tan Lok Heah**

E.& O.E.

**File Reference: SS(6/20)CO/H**

**Sale and Purchase Agreement dated 15th June, 2020**

| | |
|---|---|
| Property: | All that piece of land and hereditaments known as H.S.(M) 5220, PT No. 168, Bandar Kulim, Daerah Kulim, Negeri Kedah with an area measuring 3.127 hectares, which equivalent is 336,587.48 square feet |
| Vendor(s): | Heng Ah Lai @ H'ng Siew Choo & Lim Meow Siam both as Executor of the Estate of Lim Peet Kwang, deceased |
| Purchaser: | GOH CHENG GUAN HOLDINGS SDN. BHD. (116370-W) |
| Selling Price: | RM 5,217,105.94 |

-----------------------------------------------------------------------------------------------------------

### STATEMENT OF ACCOUNT AS AT 25/11/2020

Selling Price : RM 5,217,105.94

| | | | |
|---|---|---|---|
| 10% Deposit | = | RM | 521,710.59 |
| Less 3% to Lembaga Hasil Dalam Negeri | = | RM | 156,513-18 |
| Balance 7% Deposit | = | RM | 365,197-41 |
| | | | |
| Balance Purchase Price paid on 23/11/2020 | = | RM | 4,695,395.35 |
| Balance Purchase Price | = | RM | 5,060,592-76 |
| | | | |
| Add: F.D. Interest Earned on RPGT 3% Deposit | = | RM | 1,079-89 |
| F.D. Interest Earned on Balance 7% Deposit | = | RM | 3,285.55 |
| | | | |
| | | RM | 5,064,958-20 |
| | | | |
| Less F.D. Administrative Charges  (20%) | = | RM | 657.11 |
| | | | |
| Less Balance Legal Charges | = | RM | 27,800.00 |
| | | | |
| Balance Payable | = | RM | 5,036,501-09 |

==================

Kindly let us have your instructions to Bank into your given Bank Account as follows upon receipt of the Purchaser's Presentation Receipt of the registration of the Transfer:

| | |
|---|---|
| Beneficiary Name: | Lim Peet Kwang |
| Bank: | Hong Leong Bank Berhad |
| Account No: | 02200319726 |

**TAN LOK HEAH & ASSOCIATES**
**ADVOCATES & SOLICIITORS**
**NO.22A, JALAN MAJU JAYA,**
**PUSAT PERNIAGAAN MAJU JAYA,**
**KAMPUNG BHARU,**
**14000 BUKIT MERTAJAM. PULAU PINANG**
Tel    : 04-5373428/5373488
Fax No : 04-5373423
Email: tanlokheah@yahoo.com

| | | |
|---|---|---|
| Invoice No | : | LT.38/20 |
| Invoice date | : | 18/08/2020 |
| File Reference No. | : | OS-OFS(14/20-06) |
| SST No. | : | P13-2808-32000107 |
| Total Amount Payable | : | **RM 5,250.88** |

Invoice to:

**MADAM HENG AH LAI @ H'NG SIEW CHOO & MADAM LIM MEOW SIAM**
**Both as Executrices of the Estate of Lim Peet Kwang deceased**
**No.2466, Stonefield Lane, Janesville, WI 53546 USA**

RE:    PENANG HIGH COURT Originating Summons No. PA-24NCVC-525-08/2020
1. Heng Ah Lai @ H'ng Siew Choo
2. Lim Meow Siam
Both as Executrices of the Estate of Lim Peet Kwang deceased  -Applicant

| DESCRIPTION | AMOUNT (RM) | TOTAL AMOUNT (RM) |
|---|---|---|
| **Professional Fee** | | |
| For taking instructions, perusing relevant documents, drafting and finalizing of:- | | 6,000.00 |
| - Originating Summons for order for sale of property NO.H.S. (M) 5220 PT 168 Bandar & Daerah Kulim, Kedah | | |
| - Supporting Affidavit of Heng Ah Lai @ H'ng Siew Choo affirmed on 3/8/2020; | | |
| - Statutory Declaration of Lim Kor Chin affirmed on 29/7/2020 | | |
| - Statutory Declaration of Lim Kor Tit affirmed on 29/7/2020 | | |
| - Statutory Declaration of Lim Meow Chu affirmed on 29/7/2020 | | |
| - Statutory Declaration of Lim Meow Foon affirmed on 28/7/2020 | | |
| - Statutory Declaration of Lim Meow Siam affirmed on 23/7/2020 | | |
| - Statutory Declaration of Heng Ah Lai @ H'ng Siew Choo affirmed on 29/7/2020 | | |
| Add : 6% SST | | |
| | | 360.00 |
| **Reimbursement as on 18/08/2020** | | 6,360.00 |
| Charges for: | | |
| 1. Postage, facsimile etc, to service letters and documents. | 200.00 | |
| 2. Printing and photostating of:- | | |
| a) Correspondences | 20.00 | |
| b) "Originating Summons" | 8.00 | |
| c) "Affidavit" | 108.00 | |
| d) "Statutory Declaration | 12.00 | |
| Add: 6% SST | | |
| | 348.00 | |
| | 20.88 | |
| | 368.88 | 368.88 |

........page 2/-

# TAN LOK HEAH & ASSOCIATES

ADVOCATES & SOLICITORS
PEGUAMBELA AND PEGUAMCARA
No. 22A, Jalan Maju Jaya,
Pusat Perniagaan Maju Jaya, Kampung Bharu,
14000 Bukit Mertajam.
Tel. No.: 04-5373428, 04-5373488
Fax No.: 04-5372423 (Conveyancing), 04-5373423 (Litigation)

Our Ref : SS(6/20)CO/H

**HENG AH LAI @ H'NG SIEW CHOO &**
**LIM MEOW SIAM**
**both as executors of Estate of Lim Peet Kwang, deceased**
No. 30, Jalan Meranti,
Bagan Ajam,
13000 Butterworth, Pulau Pinang.

Bill No :
SST No.: P13-1808-32000107
Date: 20/5/2020

Page : 1 of 1

Property:  All that piece of land and hereditaments known as H.S.(M) 5220, PT No. 168, Bandar Kulim, Daerah Kulim, Negeri Kedah
Purchaser: Goh Cheng Guan Holdings Sdn Bhd (116370-W)
Selling Price: RM 5,217,105·94

| Description | Fees / Charges (RM) | 6% SST amount (RM) | Total Including SST (RM) |
|---|---|---|---|
| To our PROFESSIONAL CHARGES in taking all instruction for this matter, all attendances correspondences and work incidental thereto:- | | | |
| Transfer | 36,085.53 | 2,165.13 | 38,250.66 |
| Real Property Gains Tax | 1,100.00 | 66.00 | 1,166.00 |
| Total Fees inclusive SST | 37,185.53 | 2,231.13 | 39,416.66 |
| Office Disbursement | | | |
| Travelling | 100.00 | 6.00 | 106.00 |
| Bankruptcy Search | 50.00 | 3.00 | 53.00 |
| Photostating Charges | 50.00 | 3.00 | 53.00 |
| Incidential & Postage | 50.00 | 3.00 | 53.00 |
| Miscellaneous | 50.00 | 3.00 | 53.00 |
| DHL Courier Service Charges | 600.00 | 36.00 | 636.00 |
| Total Charges inclusive SST | 900.00 | 54.00 | 954.00 |
| Disbursement | | | |
| Land Search | 90.00 | - | 90.00 |
| Affirming & Stamping Statutory Declaration | 100.00 | - | 100.00 |
| Registration Fee for Court Order for Sale | 100.00 | - | 100.00 |
| Total Disbursement exclusive SST | 290.00 | - | 290.00 |
| TOTAL DUE TO US | 38,375.53 | 2,285.13 | 40,660.66 |

29,800-00

*Interest at the rate of 8% per annum will be chargeable after One (1) month from the*
*date of hereof pursuant to Rule 5 of the Solicitors Remuneration Order 2005.*

..........................................
**Conveyancing Department**
**H'ng Chew Hoon**

..........................................
**Accounts Department**
**Angeline    Khor Ai Ping**

..........................................
**M/S Tan Lok Heah & Associates**
**Tan Lok Heah**

E.& O.E.

Page 2

| Disbursement as on 18/08/2020 | | |
|---|---|---|
| 1.  Charges for filing fees:-<br>    a)  Originating Summons<br>    b)  Affidavit<br>    c)  Order<br>    d)  Certifying fee<br>    e)  Registration fee for Order | 160.00<br>16.00<br>80.00<br>16.00<br>50.00 | |
| 2.  Attending Penang High Court on 14/09/2020 for hearing:-<br>    Time      : 9.00AM – 10.00AM<br>    Corum   : Puan Ummu Devi a/p Loganathan<br><br>  - To Obtain Order | 200.00 | |
| | 522.00 | 522.00 |
| Less initial payment made on : 27/07/2020 12/6/ | | 7,250.88<br>2,000.00 |
| **TOTAL AMOUNT PAYABLE**<br>**RINGGIT MALAYSIA FIVE THOUSAND TWO HUNDRED  FIFTY AND**<br>**CENTS EIGHTY EIGHT ONLY** | | **5,250.88** |

.....................................................
**TAN LOK HEAH & ASSOCIATES**

**IMPORTANT NOTICE**
1.  All cheques shall be made payable to TAN LOK HEAH & ASSOCIATES and you may remit payment to   the following details:-
    - Name of beneficiary: TAN LOK HEAH & ASSOCIATES
    - Bank: PUBLIC BANK BERHAD
    - Account No. : 3112561705